**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| SAMANTHA NARANJO<br>3225 Belgreen Rd.<br>Philadelphia, PA 19154 | :<br>:<br>:<br>: | CIVIL ACTION |
| Plaintiff, | :<br>: | No.: _____ |
| v. | :<br>: | |
| UNITED AIRLINES, INC.<br>233 S. Wacker Dr.<br>14th Fl., HDQCT<br>Chicago, IL 60606 | :<br>:<br>:<br>:<br>: | **JURY TRIAL DEMANDED** |
| Defendant. | :<br>: | |

**CIVIL ACTION COMPLAINT**

Samantha Naranjo (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by United Airlines, Inc. (*hereinafter* referred to as "Defendant") of the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" – 29 U.S.C. §§ 2601, *et seq.*), and the New Jersey Law Against Discrimination ("NJLAD"). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. This Court has supplemental jurisdiction over Plaintiff's

1

state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact as her federal claims.

3. This Court may properly assert personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1392(b)(2), venue is properly laid in the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

5. Plaintiff is proceeding herein after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. United Airlines, Inc. is an international airline that serves consumers across the United States of America, including New Jersey. They have headquarters located at the above-captioned address.

9. At all times relevant herein, Defendant acted through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. On or about September 20, 1999, Defendant hired Plaintiff as a Flight Attendant at its Newark, New Jersey International Airport location.

12. During her approximate twenty-three (23) year tenure with Defendant, Plaintiff was a dedicated and hard-working employee who performed her job well.

13. At the time of her termination, Plaintiff was supervised by EWR Newark Inflight Supervisor, Michelle Mackey (*hereinafter* "Mackey").

14. Plaintiff remained in the aforesaid Flight Attendant position until her unlawful termination on or about June 6, 2022.

15. Plaintiff has and continues to suffer from ADA-qualifying disabilities, including, Crohn's Disease (and associated complications).

16. As a result of her aforesaid disabilities, Plaintiff can experience significant abdominal pain and cramping, diarrhea, fatigue, and loss of appetite and is (at times) limited in her ability to perform some daily life activities, including but not limited to normal bowel function and working.

17. Plaintiff was diagnosed with Crohn's Disease in or about 2010 and apprised Defendant's management of her aforesaid disabilities and need for medical accommodations continually thereafter, and until the end of her employment.

18. Despite her aforesaid health conditions and limitations, Plaintiff was able to perform the duties of her job well with Defendant; however, Plaintiff did require some reasonable

accommodations, including but not limited to, ADA and FMLA-qualifying intermittent medical leave when experiencing a flare up of her disabilities.

19. During the majority of her employment after her diagnosis in 2010 (discussed *supra*), Plaintiff's medical leave was treated as FMLA leave. However, Plaintiff was furloughed as a result of the COVID-19 pandemic and worked approximately two (2) months during 2021. Defendant characterized said furlough as a company leave offered to employees during the COVID-19 pandemic.

20. Plaintiff returned to work from furlough/COVID leave (discussed *supra*) in or about September of 2021.

21. Thereafter, in or about January 2022, Plaintiff applied for medical leave pursuant to the FMLA, which was denied by Defendant because Plaintiff allegedly did not have the requisite number of hours worked.

22. As a result of Defendant's denial of Plaintiff's FMLA leave request in or about January 2022, Defendant counted absences that Plaintiff took related to her disability against her rather than providing her with a reasonable accommodation under the ADA (*i.e.* intermittent time off).

23. The aforesaid ADA-covered absences which were counted against Plaintiff (simply because she did not have the requisite number of hours to be approved for intermittent medical leave under the FMLA) would also be used as a means to justify Plaintiff's ultimate termination in June of 2022 – discussed further *infra*.

24. In or about May of 2022, Plaintiff reapplied for intermittent leave under the FMLA.

25. In or about mid-May of 2022, Defendant informed Plaintiff that she was preapproved for FMLA intermittent leave.

26. Accordingly, on or about May 13, 2022, as a result of a flare up related to her disability and COVID-19 symptoms, Plaintiff called out of work and notified Defendant she was utilizing her FMLA leave.

27. Plaintiff thereafter tested positive for COVID-19 on or about May 18, 2022 (and was still experiencing symptoms related to her disability as she often had flare up when after contracting other viruses).

28. On or about May 25, 2022, Plaintiff's physician's office advised it would be sending the requisite Healthcare Provider Certification to Defendant, in order for Plaintiff to be approved for intermittent FMLA leave related to her serious health conditions (discussed *supra*).

29. Shortly thereafter, Plaintiff followed up with Mackey as to the start time for an upcoming trip she was scheduled for on or about June 3, 2022 through on or about June 4, 2022.

30. While inquiring about the start time for the June 3/June 4, 2022 trip that she was scheduled for, Mackey advised Plaintiff for the first time that she was scheduled for an investigative hearing on or about June 6, 2022, regarding her May 13, 2022 absence.

31. Plaintiff informed Mackey that she submitted her FMLA paperwork; however, Defendant alleged it had not received the same.

32. On or about June 6, 2022, during the investigative hearing, Plaintiff explained that she had a long history with Defendant, that her FMLA paperwork was submitted, and she did not know why Defendant had not received it.

33. Defendant instructed Plaintiff to resubmit the paperwork and write a statement. Plaintiff thereafter complied with Defendant's instructions.

34. However, Mackey still terminated Plaintiff's employment effective June 6, 2022.

35. The reason given for Plaintiff's termination was "dependability" citing that Plaintiff purportedly exceeded Defendant's attendance point system.

36. However, Defendant's management was well aware that the majority, if not all of Plaintiff's absences since returning from furlough/COVID leave in September of 2021 were related to her disabilities. Rather than engage in the interactive process and accommodate Plaintiff's disabilities with intermittent leave under the ADA, Defendant considered and counted said absences against her in making the decision to terminate her employment.

37. Further, on or about October 5, 2022, Plaintiff participated in Defendant's "Step One Appeal Conference" in order to dispute Defendant's discriminatory and retaliatory termination.

38. Despite Plaintiff reiterating that she required intermittent leave as a reasonable accommodation, Defendant continued to count ADA and/or FMLA-qualifying absences against her, and upheld Plaintiff's termination on or about November 4, 2022.

39. Plaintiff believes and therefore avers that Defendant terminated her employment because of her known and/or perceived disabilities, her record of impairment, in retaliation for requesting accommodations (including those under the FMLA), and/or because Defendant failed to engage in the interactive process and accommodate Plaintiff's disabilities.

**COUNT I**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
([1[Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)

40. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

41. Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities, including but not limited to, normal bowel function and working.

42. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendant; however, Plaintiff did require reasonable accommodations at times.

43. Plaintiff kept Defendant's management informed of her serious medical conditions and need for medical treatment and other accommodations, such as intermittent time off when she experienced flare ups of her disabilities.

44. Based on the foregoing, Plaintiff believes and therefore avers that her actual/perceived/record of disabilities were motivating and/or determinative factors in Defendant's decisions to count absences against her, subject her to an unjustifiable hearing, and then ultimately terminate her employment.

45. In addition, Plaintiff believes and avers that she had ADA-qualifying absences counted against her, was subjected to an unjustifiable hearing, and ultimately terminated in retaliation for requesting reasonable accommodations under the ADA.

46. Finally, Plaintiff believes and avers that Defendant failed to engage in the interactive process and accommodate her disabilities by counting/considering ADA-qualifying absences against her in making the decision to terminate her and by terminating her in order to avoid having to accommodate her.

## COUNT II
## Violations of the Family and Medical Leave Act ("FMLA")
### ([1[Interference and [2] Retaliation)

47. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

48. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C.A. § 2611(a)(i)(ii).

49. Plaintiff requested leave from Defendant, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A. § 2611(2)(i).

50. Plaintiff had at least 1,250 hours of service with Defendant during her last full year of employment prior to her request for medical leave.

51. Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A. § 2611(4)(A)(i).

52. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A. § 2612(a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

53. Defendant committed interference and retaliations violations of the FMLA by: (1) taking actions towards Plaintiff that would dissuade a reasonable person from exercising their rights under the FMLA; (2) considering Plaintiff's FMLA needs and/or time off in making the decision to terminate her employment; (3) terminating Plaintiff's employment in retaliation for requesting and/or utilizing FMLA leave; and (4) terminating Plaintiff's employment in order to prevent her from using FMLA qualifying leave in the future.

54. Upon information and belief, Defendant also counted an FMLA-qualifying absence against her (May 13, 2022 and possibly others) in making the decision to terminate her.

## COUNT III
## Violations of the New Jersey Law Against Discrimination ("NJLAD")
([1[Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)

55. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

56. Plaintiff suffered from qualifying health conditions under the NJLAD which affected her ability (at times) to perform some daily life activities, including but not limited to, normal bowel function and working.

57. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendant; however, Plaintiff did require reasonable accommodations at times.

58. Plaintiff kept Defendant's management informed of her serious medical conditions and need for medical treatment and other accommodations, such as intermittent time off when she experienced flare ups of her disabilities.

59. Based on the foregoing, Plaintiff believes and therefore avers that her actual/perceived/record of disabilities were motivating and/or determinative factors in Defendant's decisions to count absences against her, subject her to an unjustifiable hearing, and then ultimately terminate her employment.

60. In addition, Plaintiff believes and avers that she had NJLAD-qualifying absences counted against her, was subjected to an unjustifiable hearing, and ultimately terminated in retaliation for requesting reasonable accommodations under the NJLAD.

61. Finally, Plaintiff believes and avers that Defendant failed to engage in the interactive process and accommodate her disabilities by counting/considering NJLAD-qualifying

absences against her in making the decision to terminate her and by terminating her in order to avoid having to accommodate her.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.  Defendant is to promulgate and adhere to a policy prohibiting discrimination in the future against any employee(s);

B.  Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.  Plaintiff is to be awarded punitive and/or liquidated damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.  Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E.  Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F.  Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

                          Respectfully submitted,

                          **KARPF, KARPF & CERUTTI, P.C.**

By: _____
                        Ari R. Karpf, Esq.
                        3331 Street Road
                        Two Greenwood Square, Suite 128
                        Bensalem, PA 19020
                        (215) 639-0801

Dated: April 5, 2023