JESSE GRASTY, ESQ. (263792018)
STACY LANDAU, ESQ. (241602017)
WHITNEY LAZO, ESQ. (380162021)
NUKK-FREEMAN & CERRA, P.C.
26 Main Street, Suite 202
Chatham, New Jersey 07928
Telephone: (973) 665-9100
Facsimile: (973) 665-9101
*Attorneys for Defendant United Airlines, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAMANTHA NARANJO,<br><br>Plaintiff,<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>Defendant. | Civil Action No.: 2:23-cv-01939 |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56 AND TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1)

---

On the brief:
      Jesse Grasty, Esq.
      Stacy Landau, Esq.
      Whitney Lazo, Esq.

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ....................................................................................iv

PRELIMINARY STATEMENT .............................................................................1

NARRATIVE STATEMENT OF FACTS ...............................................................4

    I.    The Parties ..................................................................................................4

           a.    United Airlines ................................................................................4

           b.    Plaintiff's Employment with United and Job Responsibilities ........5

    II.    United's Applicable Policies ......................................................................5

           a.    Dependability and Attendance Policy ...........................................5

           b.    FMLA Policies ...............................................................................7

    III.    Plaintiff Was Familiar with United's Attendance Policies and
Regularly Utilized FMLA Leave ...............................................................7

    IV.    Plaintiff's Unexcused and Unprotected Absences Lead to
Discipline ...................................................................................................7

    V.    Plaintiff's Inquiries and Requests for Intermittent FMLA Leave .............9

    VI.    Plaintiff's Failure to Timely Submit FMLA Certification Pursuant
to United and FMLA Policies ..................................................................10

    VII.    Plaintiff Failed to Make Diligent, Good Faith Efforts to Submit the
FMLA Medical Certification Within 15 Days .........................................12

    VIII.    Plaintiff Did Not Request a Reasonable Accommodation Other
Than FMLA Leave and No Other Reasonable Accommodation
Was Available...........................................................................................13

    IX.    Post-Termination Appeals ........................................................................13

PROCEDURAL HISTORY....................................................................................14

STANDARD OF REVIEW FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56(c) ................................................................14

STANDARD OF REVIEW FOR MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) ................................................................15

LEGAL ARGUMENT ................................................................16

I.    PLAINTIFF'S FMLA CLAIMS FAIL AS A MATTER OF LAW ........16

    A.    Plaintiff Cannot Meet Her *Prima Facie* Burden on Her FMLA Interference Claim................................................................16

        1.    Period Prior to May 2022, Plaintiff Cannot Satisfy the Elements of a *Prima Facie* FMLA Interference Claim ................................................................18

        2.    , Plaintiff Cannot Satisfy the Elements of a *Prima Facie* FMLA Interference Claim ................................................................18

            a.  Plaintiff Failed to Make Diligent, Good Faith Efforts to Submit the FMLA Medical Certification Within 15 Days ................................................................19

    B.    Plaintiff's FMLA Retaliation Claim Fails as a Matter of Law ......22

        1.    Plaintiff Cannot Meet Her *Prima Facie* Burden On Her FMLA Retaliation Claim................................................................22

            a.  Plaintiff Did Not Exercise Rights Protected Under the FMLA In 2022................................................................23

            b.  There is No Causal Connection Between Plaintiff's Last FMLA Protected Activity In 2016 and Her Termination in 2022 ................................................................23

        2.    Defendant Has Established a Legitimate Non-Retaliatory Reason and Plaintiff Cannot Establish Pretext................................................................25

II.    PLAINTIFF'S ADA AND NJLAD CLAIMS FAIL AS A MATTER OF LAW ................................................................28

    A.    Plaintiff's Disability Discrimination Claims Under the ADA and NJLAD Fail as a Matter of Law................................................................28

1.  Plaintiff Cannot Meet Her *Prima Facie* Burden on Her Disability Discrimination Claims Under the ADA and NJLAD ..................................................28
    a.  Plaintiff Was Not Qualified to Perform the Essential Functions of Her Job .....................................29
    b.  Plaintiff's Termination Was Not the Result of Discrimination ...............................................32
2.  Plaintiff's Disability Discrimination Claims Fail Because Defendant Established a Non-Discriminatory Reason For Termination and Plaintiff Cannot Establish Pretext .....................................32

B.  Plaintiff's ADA and NJLAD Disability Retaliation Claims Fail as a Matter of Law .....................................33
    1.  Plaintiff Cannot Meet Her *Prima Facie* Burden on Her Disability Retaliation Claims .....................................33
    2.  Plaintiff's Disability Retaliation Claims Fail Because United Established a Legitimate, Non-Retaliatory Reason For Plaintiff's Termination and Plaintiff Cannot Establish Pretext .....................................34

C.  Plaintiff's Failure to Accommodate Claim Under the ADA and NJLAD Fail as a Matter of Law .....................................34
    1.  Plaintiff Cannot Meet Her *Prima Facie* Burden On Her Failure to Accommodate Claims .....................................35
        a.  United Made a Good Faith Effort to Assist Plaintiff .....................................35
        b.  Plaintiff Cannot Show That She Could Have Otherwise Been Reasonably Accommodated ...............36

III.  PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE RLA ...............37
    A. Plaintiff's FMLA, ADA, and NJLAD Claims Require Interpretation and Application of the CBA .....................................38

CONCLUSION .....................................40

# TABLE OF AUTHORITIES

**CASES**      **PAGE**

Arana v. Temple Univ. Health Sys.,
776 F. App'x 66 (3d Cir. 2019) ................................................................ 36

Armstrong v. Burdette Tomlin Mem'l Hosp.,
438 F.3d 240 (3d Cir. 2006) ..................................................................... 35

Atchison, Topeka & Santa Fe Ry. Co. v. Buell,
480 U.S. 557 (1987) .................................................................................. 38

Banner v. Fletcher,
834 F. App'x 766 (3d Cir. 2020) .............................................................. 24

Bensel v. Allied Pilots Ass'n,
387 F.3d 298 (3d Cir. 2004) ..................................................................... 38

Bertolotti v. Autozone, Inc.,
132 F.Supp.3d 590 (D.N.J. 2015) ...................................................... 36, 37

Brookins v. Staples Contract & Commercial, Inc.,
No. 11–11067 (RWZ), 2013 WL 500874 (D. Mass. Feb. 12, 2013)....... 20

Callison v. City of Philadelphia,
430 F.3d 117 (3d Cir. 2005) ..................................................................... 16

Capilli v. Whitesell Const. Co.,
271 F. App'x 261 (3d Cir. 2008) .............................................................. 26

Capps v. Mondelez Global, LLC,
847 F.3d 144 (3d Cir. 2017) ............................................................... 22, 36

Carluccio v. Parsons Inspection & Maint. Corp.,
No. 06-4354 (JLL), 2007 WL 1231758 (D.N.J. Apr. 24, 2007) .............. 39

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) .................................................................................. 14

Cottrell v. Nicholson Properties, LLC,
768 Fed. App'x 148 (3d Cir. 2019)..........................................................................34

Davis v. George Washington Univ.,
26 F. Supp. 3d 103 (D.D.C. 2014) ...........................................................................31

Davis v. PHK Staffing LLC,
No. 22-3246, 2023 WL 8757073 (10th Cir. Dec. 19, 2023)....................................31

Donahue v. Consol. Rail Corp.,
224 F.3d 226 (3d Cir. 2000)......................................................................................36

Frantti v. New York,
414 F. Supp. 3d 257 (N.D.N.Y. 2019)......................................................................31

Fuentes v. Perskie,
32 F.3d 759 (3d Cir. 1994).........................................................................................26

Hamza v. United Continental Holdings, LLC,
No. 19-8971, 2021 WL 3206814 (D.N.J. 2021) .......................................................38

Hawaiian Airlines, Inc. v. Norris,
512 U.S. 246 (1994)............................................................................................37, 38

Holmes-Mergucz v. Cellco P'ship,
No. CV 18-11816 (FLW), 2021 WL 3163985 D.N.J. July 27, 2021).....................24

Int'l Ass'n of Machinists & Aerospace Workers v. U.S. Airways, Inc.,
358 F.3d 255 (3d Cir. 2004)................................................................................16, 38

Joseph v. New Jersey Transit Rail Operations Inc.,
586 Fed. App'x 890 (3d Cir. 2014) ....................................................................28, 32

Kiburz v. England,
361 Fed. App'x 326 (3d Cir. 2010)...........................................................................31

Krouse v. American Sterilizer Co.,
126 F.3d 494 (3d Cir. 1997).................................................................................25, 33

Lawrence v. Nat'l Westminster Bank New Jersey,
98 F.3d 61 (3d Cir.1996)............................................................................................33

LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n,
503 F.3d 217 (3d Cir. 2007).......................................................24

Maher v. N.J. Transit Rail Operations, Inc.,
593 A.2d 750 (N.J. 1991)..........................................................39

Marsh v. GGB, LLC,
455 F.Supp.3d 113 (D.N.J. 2020) ....................................... Passim

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574 (1986)..................................................................15

McDonnell Douglas Corp. v. Green,
411 U.S. 792 (1973)........................................................ Passim

Messina v. Coll. of New Jersey,
624 F.Supp.3d 523 (D.N.J. Aug. 31, 2022) ...............................15

Miles v. National Football League,
641 F.Supp.3d 91 (D.N.J. 2022) ......................................... 38-39

Miller v. Univ. of Pittsburgh Med. Ctr.,
 350 F. App'x 727 (3d Cir. 2009)........................................27, 29

Moore v. U.S. Foodservice, Inc.,
Civ. No. 11–2460, 2013 WL 5476405 (D.N.J. Sept. 30, 2013) ..............................19

Orsatti v. New Jersey State Police,
71 F.3d 480 (3d Cir. 1995)........................................................15

Peter v. Lincoln Technical Institute., Inc.,
255 F.Supp.2d 417 (E.D. Pa. 2002) ..........................................20

Ross v. Gilhuy,
755 F.3d 185 (3d Cir. 2014).......................................................17

Schummer v. Black Bear Distributions, LLC,
965 F.Supp.2d 493 (D.N.J. 2013) ..............................................23

Sconfienza v. Verizon Pennsylvania Inc.,
307 Fed. App'x 619 (3d Cir. 2008)............................................19

Shedden v. Port Authority of New York and New Jersey,
No. 20-17063, 2024 WL 278568 (D.N.J. Jan. 25, 2024).........................................23

Shields v. Zuccarini,
254 F.3d 476 (3d Cir. 2001)..................................................................................15

Sommer v. The Vanguard Grp.,
461 F.3d 397 (3d Cir. 2006)..................................................................................17

Soutner v. Penn State Health,
841 Fed. App'x 409 (3d Cir. 2021)....................................................................33, 35

Stewart v. Cty. Of Salem,
274 F.Supp.3d 254 (D.N.J. 2017) .........................................................................29

Victor v. State,
203 N.J. 383 (2010).........................................................................................28, 32

Washington v. Fort James Operating Co.,
No. CIV.99–1300–JO, 2000 WL 1673134 (D. Or. Nov. 7, 2000) .........................20

Watson v. Drexel University,
No. 20-3001, 2021 WL 4429826 (3d Cir. Sept. 27, 2021) ....................................19

Whelan v. Teledyne,
226 F. App'x 141 (3d Cir. 2007).............................................................................36

Young v. Russel Corp.,
No. 2:08-cv148 (WHA), 2008 WL 5412782 (M.D. Ala.  Dec. 29, 2008) ..............20

**Rules**

Fed. R. Civ. P. 12(b)(1)........................................................................................4, 15

Fed. R. Civ. P. 56(c)................................................................................................14

**Statutes**

29 U.S.C. § 2601 ...................................................................................................23

29 U.S.C. § 2611(2)(D)(i).....................................................................................7, 17

29 U.S.C. § 2615(a)(1)............................................................................................17

45 U.S.C. § 151a ...................................................................................................37

45 U.S.C. § 181 .....................................................................................................37

45 U.S.C. § 184 .....................................................................................................37

## **Other Authorities**

29 C.F.R § 825.305(b) ..................................................................................7, 17, 19

29 C.F.R. § 825.313 ..................................................................................................7

## **PRELIMINARY STATEMENT**

Samantha Naranjo ("Plaintiff") is a former flight attendant and member of the Association of Flight Attendants ("AFA") union, based out of Defendant United Airline's ("United" or "Defendant") Newark, New Jersey hub. After repeated reminders, check-ins, and warnings regarding her unexcused absences, United terminated Plaintiff's employment for excessive unexcused absences in accordance with its policies and the AFA collective bargaining agreement ("CBA").

Pursuant to United policies, and Plaintiff's own testimony, dependability is an essential function of a United flight attendant's job. This is further reflected in the CBA, which provides that flight attendants who accumulate 30 or more attendance points are subject to termination.

From 2006 to 2016 Plaintiff regularly used Family and Medical Leave Act ("FMLA") leave. Thereafter, she was ineligible, as she had not worked enough hours. From 2017 through November 26, 2021, she accumulated 29.5 attendance points due to a series on unexcused absences, for which United issued her four written warnings. Plaintiff never disputed or grieved any of these points.

On May 12, 2022, Plaintiff was advised that she was eligible for FMLA and had 15 days to submit her medical certification, per United policy and the FMLA. She was reminded that failure to do so would result in the start of her leave being delayed, which would result in attendance points for absences prior to submission of the certification.

Plaintiff then called out of work on May 13, 2022. However, Plaintiff did not submit her medical certification by the May 27th deadline. As a result, she was not entitled to FMLA for her May 13th absence. Accordingly, she received an attendance point, which put her over the points threshold for termination under the CBA.

As a result, Plaintiff was terminated – *just like all 53 other Newark flight attendants* who reached this threshold (except for one who reached it due to an occupational injury for the which the CBA says there will be no discipline).

Plaintiff now attempts to twist her clearly non-discriminatory termination into claims of FMLA interference and retaliation (Count II) as well as discrimination, retaliation and failure to accommodate pursuant to American with Disabilities Act ("ADA") (Count I) and New Jersey Law Against Discrimination ("NJLAD") (Count III) in connection with her Crohn's disease.

Plaintiff's FMLA interference claim fails because she received all FMLA leave to which she was entitled (*i.e.*, when she had worked enough hours to be eligible and followed United's policies and procedures), which is fatal to this claim as a matter of law.

Plaintiff's FMLA retaliation and disability discrimination and retaliation claims are all analyzed under the McDonnell Douglas burden shifting framework. She cannot satisfy her *prima facie* burden for any of these claims because:

- FMLA retaliation: (1) she was not entitled to FMLA leave from 2017 through her termination in 2022, thus she cannot have engaged in FMLA

protected activity during this time; and (2) there is no causal connection between her last FMLA leave in *2016* and her termination in 2022.

- ADA and NJLAD disability discrimination: crucially, Plaintiff concedes that there was no accommodation that would have allowed her to perform the essential functions of her job other than being able to use intermittent leave unpredictably – even when she was not entitled to FMLA leave. However, this is not a reasonable accommodation as a matter of law where, as here, regular attendance is an essential function of the job. Further, United made a good faith effort, as it repeatedly met with Plaintiff and reminded her of the applicable procedures.

- ADA and NJLAD retaliation: these claims fail for the same reasons as Plaintiff's FMLA retaliation claim – the analysis is nearly identical.

Moreover, even if Plaintiff could meet her *prima facie* burden on these claims, they all fail because United had a legitimate, non-retaliatory, non-discriminatory reason to terminate. It is undisputed that attendance is an essential function of Plaintiff's job and she reached the attendance point threshold for termination per the CBA. Moreover, there is no evidence of pretext as this policy was consistently applied to over 50 other flight attendants. As such, these claims must be dismissed.

Plaintiff's ADA and NJLAD reasonable accommodation claims fail for the same reason she cannot meet her *prima facie* burden on her disability discrimination claim: it is undisputed that there was no reasonable accommodation available.

Finally, Plaintiff's claims should also be dismissed as preempted by the Railway Labor Act ("RLA"), because they are inextricably intertwined with and require interpretation of numerous policies in the CBA. As such, the claims are subject to dismissal under Fed. R. Civ. P. 12(b)(1).

Since Plaintiff's claims fail as a matter of law and/or are preempted, Defendant is entitled to summary judgment dismissing Plaintiff's Complaint in its entirety with prejudice.

## **NARRATIVE STATEMENT OF FACTS**

### I.    **The Parties**

#### a.  **United Airlines**

United Airlines, Inc. ("United") is an international airline headquartered in Chicago, Illinois. United has several bases, or "hubs", including at Newark International Airport located in Newark, New Jersey ("Newark"). See Statement of Undisputed Material Facts ("SOUMF") ¶ 1. In 2022, United had approximately 92,795 employees, about 23,000 of which were flight attendants. Id.

United is an equal opportunity employer and prohibits discrimination of any kind in its workplace. Id. ¶ 2. United's Equal Employment Opportunity ("EEO") policy is set forth in the Company's Working Together Guidelines ("WTG"), which govern employee conduct in the workplace and are provided to all employees (including Plaintiff) and available on United's intranet. Id. The Working Together

Guidelines explicitly state that United provides equal opportunity to all employees without regard to any protected category. Id.

### b. <u>Plaintiff's Employment with United and Job Responsibilities</u>

Plaintiff is a former United flight attendant, based out of the Newark hub during the relevant time period. Id. ¶ 3. Plaintiff was a member of the AFA and was therefore subject to the terms contained in the CBA between United and the AFA. Id. ¶ 5.  United employees, including Plaintiff, must also abide by United's policies contained in the WTG, which are referenced in the CBA. Id.

As a flight attendant, Plaintiff was responsible for, among other things, accountability for her commitments and assignments, as well as working with others to ensure all company standards are met. Id. ¶ 4. United employees are expected to work professionally and responsibly, which includes performing duties in a safe, courteous, helpful, competent, *dependable*, and businesslike manner. Id. ¶ 10.

## II.   <u>United's Applicable Policies</u>

### a. <u>Dependability and Attendance Policy</u>

At United, dependability is an essential function of a flight attendant's job. Id. ¶ 11. Dependability includes the ability to be on time and to be counted on to work when scheduled. Id. United's business relies on flight attendants' regular, predictable attendance. Id. Accordingly, pursuant to the attendance policy contained in the CBA, flight attendants accumulate points when they are late or absent for scheduled assignments due to, among other things, non-occupational illness not

covered by approved FMLA. Id. ¶ 12. They accrue 1-3 points per occurrence, depending on the type of infraction. Id. ¶ 14. They do not accumulate points for absences when they are eligible for leave pursuant to the FMLA, timely submit an FMLA certification form, and are approved for FMLA leave. Id. ¶ 22. In addition, flight attendants have the flexibility to trade trips with other flight attendants, which may prevent the accrual of attendance points. Id. ¶ 13.

The CBA's attendance policy provides that when a flight attendant accumulates six or more points, Attendance Warning 1 is triggered. Id. ¶ 15. At 12 or more points, Attendance Warning 2 is triggered. Id. At 18 or more points, Attendance Warning 3 is triggered. Id. At 24 or more points, Attendance Warning 4 is triggered. Id. Finally, when a flight attendant accumulates 30 or more points, he/she is subject to discharge. Id. ¶ 16. *All* attendance Warnings will be cleared if the flight attendant does not progress to the next level of discipline within the effective length of time for each warning level (e.g., 12 months for Attendance Warnings 1 and 2, 18 months for Attendance Warning 3, and 24 months for Attendance Warning 4). Id. ¶ 17. It is the flight attendant's responsibility to know how many attendance points he or she has at any given time. Id. ¶ 21.

Flight attendants are advised that if they are having difficulty meeting the essential functions of their job and need a reasonable accommodation for a disability, they should contact the Employee Service Center ("ESC") and select the Reasonable Accommodation Program ("RAP") option. Id. ¶ 29.

### b. **FMLA Policies**

Pursuant to the CBA and applicable law, in order to be eligible for FMLA leave, a flight attendant must (i) have worked or been paid for not less than 60 percent of the applicable total monthly guarantee, or the equivalent, for the previous 12-month period, and (ii) have worked or been paid for not less than 504 hours during the previous 12-month period. Id. ¶ 23; see also 29 U.S.C. § 2611(2)(D)(i). If a flight attendant is eligible for FMLA leave and properly submits an application for FMLA leave, the flight attendant must submit a completed FMLA certification within 15 days of receiving United's request such FMLA certification. Id. ¶ 25. Pursuant to United policy and applicable law, United may deny FMLA coverage for requested leave if the flight attendant fails to provide the FMLA certification within 15 days. Id. ¶ 26; see also 29 C.F.R. § 825.313 and 29 C.F.R. § 825.305(b).

## III. **Plaintiff Was Familiar with United's Attendance Policies and Regularly Utilized FMLA Leave**

As a United flight attendant, Plaintiff was familiar with the policies and procedures for utilizing FMLA leave. Id. ¶ 30. Indeed, from 2006 through 2016, Plaintiff consistently requested and was granted intermittent FMLA leave, including for her Crohn's disease, each time she was entitled to such leave. Id. ¶¶ 31, 33.

## IV. **Plaintiff's Unexcused and Unprotected Absences Lead to Discipline**

From 2017 through 2021, Plaintiff did not have enough hours to be eligible for FMLA leave and United has no record of her requesting it. Id. ¶ 34. During this

time, Plaintiff received attendance points for absences for non-occupational illness, as well as for missing trainings related to the maintenance of her qualifications and for being late to board a scheduled flight. Id. ¶¶ 35-36. Plaintiff never incurred attendance points for an absence when she was eligible for FMLA leave and followed the applicable policies related to FMLA leave. Id. ¶ 37.

Pursuant to the CBA, United engaged in progressive discipline during this time, issuing Plaintiff four written Attendance Warnings:

| Date | Warning # | Total Points |
|------|-----------|--------------|
| April 16, 2017 | 1 | 7 |
| August 3, 2017 | 2 | 12 |
| January 5, 2019 | 3 | 19 |
| November 9, 2020 | 4 | 25.5 |

Id. ¶¶ 39-41.

Each Attendance Warning reminded Plaintiff that, among other things, if she was having difficulty with attendance – an essential job function of her job – due to a medical issue, she should call the ESC and select the RAP option, and that she had the right to appeal pursuant to the CBA. Id. ¶¶ 42-43. During the relevant time period, Plaintiff never called the ESC for an accommodation (other than to request FMLA leave), nor did she grieve any of the four Attendance Warnings she received pursuant to the CBA. Id. ¶¶ 54, 101.

On December 13, 2020, only about one month after Plaintiff received Attendance Warning 4, Plaintiff accumulated an attendance point due to her absence from training, unrelated to her Crohn's disease. Id. ¶ 45. Plaintiff's supervisor,

Michelle Mackey, contacted Plaintiff regarding the absence and to conduct a Work History Review, to discuss options to manager Plaintiff attendance and avoid incurring additional points. Id. ¶¶ 46-47.

On January 12, 2021, Mackey met with Plaintiff to review her attendance and discuss her having reached Attendance Warning 4, the final attendance warning. Mackey reiterated to Plaintiff that discipline is progressive and reminded Plaintiff to apply for FMLA leave, if needed. Id. ¶¶ 51-52.

On November 26, 2021, Plaintiff incurred two more points, bringing her total to 29.5 points – just shy of the 30-point threshold for termination. Id. ¶ 53.

### V.    Plaintiff's Inquiries and Requests for Intermittent FMLA Leave

On January 19, 2022, Plaintiff and her doctor completed an FMLA certification. Id. ¶ 55. On February 14, 2022, Plaintiff initiated an FMLA leave request and submitted the FMLA certification. Id. ¶ 56. Plaintiff also submitted an inquiry to see if she had worked enough hours to be eligible for FMLA leave. Id. ¶ 57. She was advised that she still had not worked the required 504 hours. Id. ¶ 58. As such, Plaintiff was not eligible for FMLA leave at that time. Id.

On May 12, 2022, Plaintiff requested FMLA leave and was informed that she was eligible. Id. ¶ 61. As was the case with each prior instance where Plaintiff requested FMLA leave and was eligible, Plaintiff and her doctor were required to complete an FMLA certification, and Plaintiff was required to return the completed FMLA certification within 15 calendar days. Id.  A blank United FMLA certification

form was enclosed with the correspondence sent to Plaintiff *via email and mail* on May 12, 2022, advising of her FMLA eligibility. Id. Plaintiff was reminded that if United did not receive the completed certification within 15 calendar days, the start of her leave may be delayed and she would accumulate attendance points for absences prior to submission of the certification. Id. ¶ 62. (This was not news to Plaintiff, as she previously received attendance points because she failed to submit the FMLA certification by the 15-day deadline. Id. ¶¶ 63-66.) The completed FMLA certification was due by May 27, 2022. Id. ¶ 67.

## VI.    Plaintiff's Failure to Timely Submit FMLA Certification Pursuant to United and FMLA Policies

Plaintiff called out of work on May 13, 2022. Id. ¶ 68. Initially, this absence was marked as "pending FML." Id. ¶ 69.

Plaintiff's FMLA certification was not submitted to United by the May 27, 2022 deadline. Id. ¶ 71. As a result, Plaintiff netted one attendance point for her May 13th absence, bringing her beyond the 30-point threshold for termination. Id. ¶ 73.

Prior to taking action, United conducted a points review, which confirmed the attendance points on Plaintiff's record were accurate. Id. ¶ 76. Thereafter, on June 3, 2022, Mackey communicated with Plaintiff about her absence. Id. ¶ 78. *Plaintiff stated she thought her FMLA certification had been submitted.* Id. That day, United issued Plaintiff a Letter of Investigation ("LOI"), scheduling a meeting for June 6, 2022 to discuss Plaintiff's attendance points. Id. ¶ 77. The LOI reminded Plaintiff

that pursuant to the CBA, a flight attendant is subject to discharge if she accumulates 30 or more points. Id.

At the LOI meeting, Plaintiff submitted a written statement wherein *she admitted she wrongfully assumed her FMLA certification was faxed over to United and took accountability for not following through* to ensure it had been provided to United. Id. ¶¶ 81-82. At the conclusion of the meeting, Mackey advised Plaintiff that her employment was terminated for exceeding the attendance points threshold per the CBA. Id. ¶ 84.

On June 11, 2022, Plaintiff received a formal termination letter stating: (i) It was Plaintiff's responsibility to know the status of her attendance point accumulation; (ii) Plaintiff was issued Attendance Warnings 1-4 in compliance with the CBA; (iii) Plaintiff had taken full responsibility for not confirming that her FMLA certification was timely submitted; (iv) Plaintiff's conduct was inconsistent with the WTG in the areas of professionalism, responsibility, and working dependable; and (v) Plaintiff's dependability record warranted termination. Id. ¶ 86.

Crucially, **Plaintiff's termination was consistent with the 53 other United Newark based flight attendants who reached or exceeded the 30-point threshold between 2019 and 2024, all of whom were also terminated** (except for one, whose absence was due to a work-related injury, which is not subject to termination pursuant to the CBA). Id. ¶ 85.

## VII.  Plaintiff Failed to Make Diligent, Good Faith Efforts to Submit the FMLA Medical Certification Within 15 Days

Plaintiff did not advise United that she would not be able to submit the FMLA certification by the May 27, 2022 deadline. Id. ¶ 95. Plaintiff also did not follow up with her doctor prior to the May 27, 2022 deadline to ensure the certification would be completed. Id. ¶ 94. Indeed, when she spoke to Mackey on June 3, 2022, Plaintiff stated that she assumed it had been submitted – something she reiterated in her written statement on June 6, 2022. Id. ¶¶ 78, 82.

Plaintiff did not even provide the FMLA certification forms to her doctor at any point in May 2022. Id. ¶ 92. Plaintiff's doctor's appointment, which was on May 25, 2022, was a *virtual* appointment – meaning the forms would have been submitted electronically. Id. ¶ 90. Yet, Plaintiff does not remember providing the FMLA certification forms to her doctor at that time and her doctor's office has no record of any forms being provided by Plaintiff in May 2022. Id. ¶ 92. (Although Plaintiff's May 21, 2022 Help Hub submission to United indicates that she tested positive for COVID-19 on May 19, 2022, she testified that by the time of her May 25, 2022 doctor's appointment, those symptoms had eased and she felt "well." Id. ¶¶ 89, 91.)

Following her virtual appointment on May 25, 2022, Plaintiff did not communicate with her doctor again until after her conversation with Mackey on June 3, 2022, when she messaged her doctor asking him to meet "prior to [June 6] 1pm" to sign an FMLA certification. Id. ¶ 96. On the morning of June 6, 2022, Plaintiff

visited her doctor's office to have him complete the FMLA certification. Id. ¶ 97. *Although the FMLA certification was due to United on May 27, 2022, it was not submitted until after Plaintiff's doctor completed it on June 6, 2022, nine days after the due date*. Id. ¶ 98.

## VIII.  Plaintiff Did Not Request a Reasonable Accommodation Other Than FMLA Leave and No Other Reasonable Accommodation Was Available

Despite being reminded to do so whenever she received an Attendance Warning, Plaintiff never spoke to United's ESC for an accommodation other than FMLA leave during the relevant time period. Id. ¶ 101. However, Plaintiff was not eligible for FMLA leave from 2017 through May 2022 (insufficient hours worked) and was not entitled to leave for her May 13, 2022 absence due to her failure to timely submit the medical certification. Id. ¶¶ 34, 71-72.

Critically, Plaintiff concedes that there was no accommodation that would have permitted her to perform the essential functions of her job – other than being able to use intermittent leave unpredictably, even when she was not eligible for FMLA leave or had not timely submitted an FMLA certification. Id. ¶ 104.

## IX.  Post-Termination Appeals

Plaintiff appealed her termination in accordance with the CBA grievance process. Id. ¶ 105. The termination decision was upheld at both the Step One and Step Two grievance levels and the next step remains pending. Id. ¶¶ 106-107.

Based on these undisputed facts, United is entitled to summary judgment on all of Plaintiff's claims.

## PROCEDURAL HISTORY

On April 5, 2023, Plaintiff filed a three-count Complaint asserting claims for: (1) disability discrimination, retaliation, and failure to accommodate in violation of the ADA (Count I); (2) interference and retaliation in violation of the FMLA (Count II); and (3) disability discrimination, retaliation, and failure to accommodate in violation of the NJLAD (Count III). See Docket Entry ("Dkt.") 1.

The parties completed fact and expert discovery. As such, this case is now ripe for summary judgment.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56(c)

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

In the face of a properly supported motion for summary judgment, the non-movant's burden is rigorous. Specifically, as the Supreme Court has made clear:

> [I]ts opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . In the language of the Rule, the non-moving party must come forward with "specific facts showing that there is a

> genuine issue for trial." . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986) (citations omitted); Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). A party "cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but *must point to concrete evidence in the record that supports each and every essential element of [her] case*." Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995) (emphasis added).

As discussed more fully below, there are no genuine issues of material fact to sustain Plaintiff's claims, which fail as a matter of law. As such, Defendant is entitled to summary judgment and dismissal of the Complaint in its entirety with prejudice.

## STANDARD OF REVIEW FOR MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of any claim over which the Court lacks subject matter jurisdiction. When a defendant moves to dismiss for lack of jurisdiction over the subject matter, the Court must consider whether a cause of action can be maintained as a matter of law. However, it is plaintiff's burden to persuade the Court that it has subject matter jurisdiction. Messina v. Coll. of New Jersey, 624 F.Supp.3d 523, 526 (D.N.J. Aug. 31, 2022).

Under the Railway Labor Act ("RLA"), disputes between carriers and unions representing their employees concerning the interpretation or application of CBAs,

including disciplinary procedures and decisions, are deemed to be minor disputes subject to the "mandatory, exclusive and comprehensive" jurisdiction of the CBA's grievance procedures and System Board of Adjustment arbitration. Int'l Ass'n of Machinists & Aerospace Workers v. U.S. Airways, Inc., 358 F.3d 255, 260 (3d Cir. 2004). Here, Plaintiff's challenges to attendance, leave, grievance, and discipline processes outlined in the parties' CBA deprive the Court of jurisdiction to hear her claims, which must be dismissed.

## LEGAL ARGUMENT

### POINT I
### PLAINTIFF'S FMLA CLAIMS FAIL AS A MATTER OF LAW

Count II of Plaintiff's Complaint alleges violations of the FMLA based on theories of interference and retaliation. See Dkt. 1. Both of these claims fail.

### A. Plaintiff Cannot Meet Her *Prima Facie* Burden on Her FMLA Interference Claim

Plaintiff's FMLA interference claim relies upon her allegations that she was dissuaded from exercising her rights under the FMLA. See Dkt 1, ¶ 53. This claim fails because Plaintiff received all FMLA leave to which she was entitled. See Callison v. City of Philadelphia, 430 F.3d 117, 120 (3d Cir. 2005) (an FMLA interference claim "is only about whether the employer provided the employee with entitlements guaranteed by the FMLA.").

To establish a *prima facie* claim of FMLA interference, Plaintiff must demonstrate that: (1) Plaintiff was an eligible employee under the FMLA; (2)

16

Defendant was an employer as defined by the FMLA; (3) Plaintiff was entitled to take leave under the FMLA; (4) Plaintiff gave notice to Defendant of her intention to take leave; and (5) Plaintiff was denied benefits to which she was entitled under the FMLA. 29 U.S.C. § 2615(a)(1); Ross v. Gilhuy, 755 F.3d 185, 191-192 (3d Cir. 2014); see also Sommer v. The Vanguard Grp., 461 F.3d 397, 399 (3d Cir. 2006) (interference claim requires an employee to show that she was not only entitled to FMLA benefits but that she was denied those benefits).

To satisfy the first prong – eligibility for leave pursuant to the FMLA – a flight attendant must (i) have worked or been paid for not less than 60 percent of the applicable total monthly guarantee, or the equivalent, for the previous 12-month period, and (ii) have worked or been paid for not less than 504 hours during the previous 12-month period. 29 U.S.C. § 2611(2)(D)(i).

Moreover, even where an employee is eligible for FMLA leave, in order to be entitled to such leave, various other requirements must be satisfied. Those include that the employee must provide the employer with the FMLA medical certification completed by the employee and her medical provider "within 15 calendar days after the employer's request, unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." 29 C.F.R § 825.305(b).

### 1. Period Prior to May 2022, Plaintiff Cannot Satisfy the Elements of a *Prima Facie* FMLA Interference Claim

It is undisputed that from 2017 through May 2022, Plaintiff was not eligible for FMLA leave, as she had not worked the requisite 504 hours in the prior 12-month period. See SOUMF, ¶ 34. Specifically, Plaintiff testified that from 2017 through 2021, she did not work enough hours to be eligible. Id. In fact, there is no record she even requested FMLA leave during that time period. Id. Further, Plaintiff still had not worked enough hours and therefore was not eligible when she applied for FMLA leave on February 14, 2022. Id. ¶¶ 56-58. There is no evidence to contrary.

It is axiomatic that an employee who is not eligible for FMLA leave is not *entitled to* such leave. Thus, since Plaintiff was not eligible for FMLA leave during this time, she also was not entitled to such leave. Therefore, Plaintiff cannot satisfy the first, third, fourth, and fifth elements of her *prima facie* claim for any claims pertaining to the time period prior to May 2022.

### 2. In or After May 2022, Plaintiff Cannot Satisfy the Elements of a *Prima Facie* FMLA Interference Claim

Although Plaintiff was eligible for FMLA leave when she applied on May 12, 2022, it is undisputed that she failed to submit the FMLA certification within the 15-day window required both by law and by United policy. Id. ¶ 71. Plaintiff did not submit the certification until June 6, 2022 – nine days after it was due. Id. ¶ 98. (Even if Plaintiff argues her 15-day window runs from the date of her absence – May 13th – the outcome is the same, her submission was still eight days late.) Thus, she was

not entitled to FMLA leave for her May 13, 2022 absence, and therefore cannot establish the third, fourth or fifth elements of a *prima facie* claim for this time period. See Watson v. Drexel University, No. 20-3001, 2021 WL 4429826 (3d Cir. Sept. 27, 2021) (holding employer was within its rights to deny plaintiff's FMLA request when he submitted the certification after the 15-day deadline); see also 29 C.F.R. § 825.305(b); Moore v. U.S. Foodservice, Inc., Civ. No. 11–2460, 2013 WL 5476405, at *8 (D.N.J. Sept. 30, 2013) (holding "[I]f Plaintiff was not denied FMLA leave to which he was entitled, summary judgment must be granted in favor of the defense").

### a. Plaintiff Failed to Make Diligent, Good Faith Efforts to Submit the FMLA Medical Certification Within 15 Days

To the extent that Plaintiff tries to argue that she should have been permitted an exception to the 15-day deadline, that argument is unavailing. It is the employee's responsibility to ensure compliance with FMLA procedures, so long as the employee had notice of the requirements. Sconfienza v. Verizon Pennsylvania Inc., 307 Fed. App'x 619, 622 (3d Cir. 2008). The FMLA requires that the medical certification be provided within 15 days, "unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." 29 C.F.R. § 825.305(b). The undisputed evidence shows that is not the case here.

There is little case law in this jurisdiction examining the circumstances under which it is appropriate to make an exception to the 15-day requirement and extend the deadline for an employee seeking FMLA leave to provide the requested

certification. However, there is ample instructive authority establishing that extensions are required only in very limited circumstances, which do not exist here.

Courts have consistently held that the requisite "diligent, good faith efforts" exist only where *prior to the expiration of the deadline* the employee *followed up with their physician* about the certification *and communicated to her employer* that they were having difficulty obtaining the certification. See, e.g., Young v. Russel Corp., 2008 WL 5412782 (M.D. Ala.  Dec. 29, 2008) (granting employer summary judgment where plaintiff did not timely submit the certification, noting that although plaintiff gave the certification to her doctor before the submission deadline, the certification was not provided to the employer by the deadline, and plaintiff had not exercised diligence regarding the submission of her certification); Brookins v. Staples Contract & Commercial, Inc., 2013 WL 500874, at *3 (D. Mass. Feb. 12, 2013) (denying equitable tolling where an employee did not keep her employer appraised of her difficulties in obtaining certification); Washington v. Fort James Operating Co., No. CIV.99–1300–JO, 2000 WL 1673134, at *5 (D. Or. Nov. 7, 2000) (noting that good faith efforts require "at least that the employee contact his employer by telephone and make it aware that he is unable to return his certification before the deadline."); Cf. Peter v. Lincoln Technical Institute., Inc., 255 F.Supp.2d 417 (E.D. Pa. 2002) (allowing equitable tolling where the employee followed up with her doctor for the certification at least three times and was in regular communication with her employer regarding the delay in obtaining the certification).

Here, United provided Plaintiff notice of the FMLA procedures, including the 15-day deadline, via mail and email on May 12, 2022, as well as numerous times previously. <u>See</u> SOUMF, ¶ 61-63. (As noted above, Plaintiff was well aware that she would incur attendance points if she did not meet the deadline, as this had happened to her previously. <u>Id.</u> ¶¶ 64-66.) Despite this notice, Plaintiff – who was already on the precipice of termination with 29.5 attendance points – concedes that prior to the May 27, 2022 deadline, she neither followed up with her doctor regarding the status of the certification nor did she communicate with United about any difficulties in timely submitting the certification. <u>Id.</u> ¶¶ 94-95. She had no communications about this with her doctor or United until June 3, 2022, six days after the deadline. <u>Id.</u> ¶¶ 78, 96. Plaintiff explicitly acknowledged that she failed to exercise diligence, admitting in her written statement, she "assum[ed] [her fmla paperwork] was faxed over to United…. I take accountability I did not follow through… I assumed everything was done." <u>Id.</u> ¶ 82. Plaintiff confirmed at her deposition in no uncertain terms that she did not follow up with her doctor following her May 25th virtual appointment to confirm he completed the certification form.  <u>Id.</u> ¶ 83.

In sum, Plaintiff was not entitled to FMLA leave for her May 13, 2022 absence and, therefore, was not denied any leave to which she was entitled because she: (i) failed to submit the required FMLA certification within the 15-day deadline, and (ii) failed to make a diligent, good faith effort to do so, as evidenced by her failure to

follow-up with her physician and communicate with United. Therefore, Plaintiff's FMLA interference claim fails.

## B. Plaintiff's FMLA Retaliation Claim Fails as a Matter of Law

Plaintiff alleges that United terminated her in retaliation for requesting and/or utilizing FMLA leave. See Dkt. 1, ¶ 53. Plaintiff cannot establish a *prima facie* retaliation claim because: (1) she was not entitled to FMLA leave from 2017 through her termination in 2022, thus she cannot have engaged in FMLA protected activity during this time; and (2) there is no causal connection between her last FMLA leave in 2016 and her termination in 2022. Moreover, United had a legitimate, non-retaliatory reason to terminate Plaintiff given that she exceeded the attendance point threshold set forth in the CBA and United has consistently applied this policy to over 50 other flight attendants. Thus, Plaintiff cannot maintain that her termination was pretext.

### 1. Plaintiff Cannot Meet Her *Prima Facie* Burden On Her FMLA Retaliation Claim

FMLA retaliation claims are analyzed under the McDonnell Douglas burden shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Capps v. Mondelez Global, LLC, 847 F.3d 144, 151 (3d Cir. 2017). To establish a *prima facie* claim of FMLA retaliation, the plaintiff must show: (1) she exercised rights protected under the FMLA; (2) she suffered an adverse employment action; and (3) the adverse employment action was "causally related to her

invocation of rights." <u>Schummer v. Black Bear Distributions, LLC</u>, 965 F.Supp.2d 493, 498 (D.N.J. 2013); <u>see also</u> 29 U.S.C. § 2601 *et seq*.

### a. Plaintiff Did Not Exercise Rights Protected Under the FMLA In 2022

To the extent Plaintiff is alleging FMLA retaliation in connection with leave she sought in 2022, that claim fails for the same reason her FMLA interference claim fails – Plaintiff was not entitled to FMLA leave at any point in 2022. As a result, there is no protected right (and thus, can be no retaliation) as a matter of law. <u>See Marsh v. GGB, LLC</u>, 455 F.Supp.3d 113, 123 (D.N.J. 2020); <u>see also</u> <u>Shedden v. Port Authority of New York and New Jersey</u>, 2024 WL 278568 at *5 (D.N.J. Jan. 25, 2024) (FMLA interference and retaliation claims failed because plaintiff was not entitled to the requested leave).

### b. There is No Causal Connection Between Plaintiff's Last FMLA Protected Activity In 2016 and Her Termination in 2022

It is also undisputed that Plaintiff was not entitled to FMLA leave from 2017 through 2021, as she was not eligible. <u>See</u> SOUMF, ¶ 34. (And, United has no record of her having sought leave during this time. <u>Id.</u>) Thus, she did not engage in protected activity during that time. Rather, the last time Plaintiff engaged in FMLA protected activity was in 2016. <u>Id.</u> ¶ 33. There is no causal connection between Plaintiff's leave in 2016 and her termination in 2022.

To demonstrate a causal connection, a plaintiff may point to "unusually suggestive temporal proximity" between the protected activity and the allegedly retaliatory action. Banner, 834 F. App'x at 770. Given the six-year gap between Plaintiff's last protected activity and her termination, no such temporal proximity exists here. See Id. (affirming summary judgment on plaintiff's FMLA retaliation claim finding a *four-month* gap was insufficient to establish causal connection); see also LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) (finding a three-month gap was insufficient to establish a causal connection to defeat summary judgment).

In the absence of unduly suggestive temporal proximity, a plaintiff must proffer evidence that raises an inference of causation including retaliatory intent on the part of the employer. Holmes-Mergucz v. Cellco P'ship, No. CV 18-11816 (FLW), 2021 WL 3163985, at *6 (D.N.J. July 27, 2021), aff'd, No. 21-2617, 2022 WL 16545589 (3d Cir. Oct. 31, 2022). Plaintiff cannot identify any such evidence.

In Holmes-Mergucz, supra, Chief Judge Wolfson granted summary judgment on claims under the FMLA, ADA, and NJLAD finding a lack of causal connection. Although Plaintiff alleged that management made discriminatory remarks, denied her overtime and generally was hostile, the Court held even this was insufficient to demonstrate causation where the employer's actions were "founded in legitimate, practical business concerns" and related to her performance and the record showed prior disciplinary warnings. Id. at *6-8.

24

Here, the record contains no evidence that United was antagonistic towards Plaintiff after she engaged in any FMLA protected activity. To the contrary, it is undisputed that United: (1) granted Plaintiff all FMLA leave for which she applied and to which she was entitled; (2) provided Plaintiff with four Attendance Warnings pursuant to the CBA; (3) reminded Plaintiff in each Attendance Warning that if she was having difficulty maintaining regular, predictable attendance due to a medical issue, that she was required to call the ESC and select the RAP option; (4) conducted a points review prior to issuing Plaintiff an LOI to ensure all points reflected on her dependability record were accurate; and (5) proceeded to termination according to the precise terms of the CBA after Plaintiff received more than 30 attendance points. See SOUMF, ¶¶ 31, 33, 38-42, 76, 84. In this regard, due to the lack of support for a causal connection, Plaintiff's FMLA retaliation claim fails and must be dismissed.

### 2. Defendant Has Established a Legitimate Non-Retaliatory Reason and Plaintiff Cannot Establish Pretext

Even if Plaintiff was able to establish a *prima facie* claim – which she cannot – the record shows that United has a legitimate, non-retaliatory reason for her termination given that she reached the attendance point threshold for termination pursuant to the CBA. There is no evidence this rationale was pretext.

Under the McDonnell Douglas burden shifting framework, if a plaintiff can meet her initial burden, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the termination. Krouse v. American

Sterilizer Co., 126 F.3d 494, 500-501 (3d Cir. 1997). The burden at this stage is "relatively light" and is satisfied if the employer produces evidence "which, taken as true, would permit the conclusion that there was nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). The employer does not need to prove that the proffered reason actually motivated its behavior since throughout the burden shifting framework "the ultimate burden of proving intentional discrimination always rests with the plaintiff." Id.

Once the defendant meets this minimal burden, the burden shifts back to the plaintiff "'to prove by a preponderance of the evidence that the legitimate reasons offered by the [defendant] were not its true reasons,'" but were merely a pretext for unlawful retaliation (or discrimination). Capilli v. Whitesell Const. Co., 271 F. App'x 261, 266 (3d Cir. 2008) (citation omitted). Specifically, plaintiff must offer evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions." Fuentes, 32 F.3d at 764.

Here, United is easily able to satisfy its minimal burden. United's policies clearly state – and Plaintiff concedes – that dependability is an essential function of a flight attendant's job. See SOUMF, ¶ 11. Dependability includes the ability to be counted on to work when scheduled. Id. The CBA explicitly states that when a flight attendant accumulates 30 or more attendance points, the flight attendant will be

terminated. Id. ¶ 15. The letter of termination issued to Plaintiff and the subsequent grievance denials make it clear that Plaintiff was terminated because her actions were inconsistent with United's WTG in the areas of professionalism, responsibility, and dependability. Id. ¶¶ 88, 106-107. As such, United abided by its policies and the CBA when it terminated Plaintiff's employment for accumulating 30.5 attendance points. See Marsh, 455 F.Supp.3d at 123 (holding that "excessive, unprotected absenteeism" is a legitimate, nondiscriminatory basis for termination particularly where the employer had an attendance policy).

The comparator evidence is fatal to Plaintiff's ability to establish pretext. United terminated every one of its 54 Newark based flight attendants, including Plaintiff, who accumulated 30 or more attendance points (except for one whose absence was due to a work-related injury, which the CBA specifically states is not subject to termination). See SOUMF, ¶ 18; see also Miller v. Univ. of Pittsburgh Med. Ctr., 350 F. App'x 727, 729 (3d Cir. 2009) (finding no evidence of pretext where plaintiff "offer[ed] no evidence that she was treated any differently than [employees outside her protected class] who had similar records of absenteeism.").

Moreover, United repeatedly reminded Plaintiff of her options to request FMLA leave, reiterated the applicable policies regarding FMLA leave and the process for seeking a reasonable accommodation, and when Plaintiff was entitled, United consistently granted her requests for FMLA leave. See SOUMF, ¶¶ 42, 52.

Plaintiff cannot point to any evidence which could permit a factfinder to determine that United's reason is unworthy of credence.

Because Plaintiff has not and cannot come forward with any evidence establishing that United's reason for her termination was pretext for FMLA retaliation, her claim fails, and United is entitled to summary judgment.

## POINT II
## PLAINTIFF'S ADA AND NJLAD CLAIMS FAIL AS A MATTER OF LAW

Count I of Plaintiff's Complaint alleges violations of the ADA, including disability discrimination, retaliation, and a failure to accommodate. See Dkt. 1. Count III of Plaintiff's Complaint alleges the same theories of liability under the NJLAD. Each of these claims fails as a matter of law.

### A. Plaintiff's Disability Discrimination Claims Under the ADA and NJLAD Fail as a Matter of Law

Plaintiff alleges that her disability – and not her excessive attendance infractions – was the reason for her termination. See Dkt. 1, ¶¶ 44-45, 59. The undisputed evidence shows otherwise.

### 1. Plaintiff Cannot Meet Her *Prima Facie* Burden on Her Disability Discrimination Claims Under the ADA and NJLAD

Disability discrimination claims under the ADA and the NJLAD are analyzed under the same framework. Joseph v. New Jersey Transit Rail Operations Inc., 586 Fed.App'x 890, 892 (3d Cir. 2014); Victor v. State, 203 N.J. 383, 415 (2010)). To state a *prima facie* cause of action for disability discrimination, Plaintiff must show

she: (1) was disabled; (2) was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) suffered an adverse employment decision as a result of discrimination. Stewart v. Cty. of Salem, 274 F.Supp.3d 254, 259 (D.N.J. 2017) (internal citation omitted).

Plaintiff cannot establish the second and third elements of her *prima facie* discrimination claims as her lack of dependability made her unqualified to perform her essential job functions and, as discussed above, there is no causal connection between her disability and her termination. Even if she could make a prima facie case, United had a legitimate, non-discriminatory reason for termination.

### a. Plaintiff Was Not Qualified to Perform the Essential Functions of Her Job

Given Plaintiff's lengthy history of attendance issues, Plaintiff clearly was not qualified to perform the essential functions of her job. See SOUMF, ¶¶ 35-41. Moreover, Plaintiff conceded that there was *no accommodation* that would have allowed her to perform the essential functions of her job other than being permitted to miss work as necessary, even when she was not entitled to FMLA leave, which is not reasonable. Id. ¶ 104.

"In determining what constitutes the essential functions of a position, courts consider factors including the employer's judgment of essential functions and a written description of the position." Miller, *supra*, 350 F. App'x at 729 (citing Deane v. Pocono Med. Ctr., 142 F.3d 138, 146 (3d Cir.1998) (en banc)). "Common sense

dictates that regular attendance is usually an essential in most every employment setting; if one is not present, he is usually unable to perform his job." Id. (quoting Jovanovic v. In–Sink–Erator Div. of Emerson Elec. Co., 201 F.3d 894, 899–900 (7th Cir.2000)).  Thus, where attendance is an essential function of a plaintiff's job, and the plaintiff is not able to regularly be present at work, they are not qualified for their job. See Marsh, 455 F.Supp.3d at 115 (granting summary judgment on ADA, NJLAD, and FMLA claims, finding attendance was key to the plaintiff's job duties and because plaintiff was unable to attend work on a regular basis when not otherwise excused, she was not qualified for the job).

Here, Plaintiff cannot establish she is qualified for the flight attendant position because she was not able to meet the attendance requirements, with or without a reasonable accommodation.

It is undisputed that attendance was an essential function of Plaintiff's job. See SOUMF, ¶ 11. Plaintiff conceded at her deposition that dependability, which includes the ability to be counted on to work when scheduled, is an essential function of a flight attendant's job. Id. This is corroborated by United's policies, including The Working Together Guidelines, which apply to all United employees and emphasize that United relies on regular, predictable attendance of its employees. Id. The importance of attendance is further reflected in the CBA between United and the AFA, which requires termination if a flight attendant accumulates 30 attendance points – something that has been consistently enforced. Id. ¶ 12.

Moreover, Plaintiff admits that there was *no accommodation* that would have allowed her to perform the essential functions of her job, other than being able to use intermittent leave unpredictably – even when Plaintiff was not eligible for FMLA leave or had not timely submitted FMLA certification forms. Id. ¶ 104. Courts have consistently held this is not a reasonable accommodation. See, e.g., Kiburz v. England, 361 Fed. App'x 326, 336 (3d Cir. 2010) (affirming summary judgment on disability discrimination claim finding an accommodation that "condoned [plaintiff's] unpredictable absences . . . was unreasonable"); Frantti v. New York, 414 F. Supp. 3d 257, 289 (N.D.N.Y. 2019), aff'd, 850 F. App'x 17 (2d Cir. 2021) ("an erratic and unpredictable accommodation, such as an open-ended 'work whenever you want schedule' is unreasonable as a matter of law") (external citations omitted); Davis v. George Washington Univ., 26 F. Supp. 3d 103, 116 (D.D.C. 2014); Davis v. PHK Staffing LLC, No. 22-3246, 2023 WL 8757073, at *3 (10th Cir. Dec. 19, 2023). (As noted above, Plaintiff admits she had the ability to trade shifts with other flight attendants, which would have avoided the accrual of attendance points. She failed to take advantage of this option. See SOUMF, ¶ 13).

As Plaintiff had accumulated 30.5 points for *unexcused* absences (including absences for missed trainings unrelated to any illness), which excluded any absences covered by FMLA, Plaintiff was unable to perform the essential functions of her job, and there was no reasonable accommodation that would have allowed her to do so. See Marsh, supra, 455 F.Supp.3d at 115.

### b. Plaintiff's Termination Was Not the Result of Discrimination

Plaintiff also cannot establish the third element of her *prima facie* discrimination claim – that United discriminated against her by terminating her because of her disability. As discussed in Point I(B)(2) above, there is no dispute that Plaintiff was terminated in accordance with the CBA for exceeding 30 attendance points – just like 53 other flight attendants who reached this threshold – and not due to her disability. See SOUMF, ¶ 18. There is also no dispute that Plaintiff was granted FMLA leave for her Crohn's disease every time she applied, and was entitled, since her diagnosis in 2010. Id. ¶ 33. Thus, Plaintiff's discrimination claim fails on the causation prong.

### 2. Plaintiff's Disability Discrimination Claims Fail Because Defendant Established a Non-Discriminatory Reason For Termination and Plaintiff Cannot Establish Pretext

The McDonnell Douglas burden shifting framework applies to discrimination claims under the ADA and NJLAD. See Joseph, supra, 586 Fed. App'x at 892; Victor, supra, 203 N.J. 383.

As analyzed in Point I(B)(2), Plaintiff cannot rebut United's legitimate non-discriminatory reason for her termination – Plaintiff's accumulation of more than 30 attendance points for unprotected absences, which requires termination under United's policies and the CBA. See Soutner v. Penn State Health, 841 Fed. App'x 409, 415 (3d Cir. 2021) (affirming summary judgment on ADA discrimination claim

because termination for unscheduled absences and failure to comply with the employer's FMLA policies were legitimate, non-discriminatory reasons for termination). As such, Plaintiff's discrimination claims must be dismissed.

## B. Plaintiff's ADA and NJLAD Disability Retaliation Claims Fail as a Matter of Law

Plaintiff alleges that she was terminated in retaliation for requesting reasonable accommodations under the ADA and NJLAD when she accrued attendance points for absences she alleges were protected. See Dkt. 1, ¶¶ 45-46, 60-61. This claim fails for the same reasons Plaintiff's FMLA retaliation claim fails – the analysis is nearly identical. Plaintiff cannot establish a causal connection between her only alleged request for an accommodation (intermittent FMLA leave) and her points accrual or termination and, even if she could, she cannot demonstrate that United's legitimate, non-discriminatory reason for termination was pretext.

### 1. Plaintiff Cannot Meet Her *Prima Facie* Burden on Her Disability Retaliation Claims

A *prima facie* retaliation claim under the ADA or the NJLAD requires a showing of the same elements as an FMLA retaliation claim: (1) protected activity; (2) adverse action by Defendant either after or contemporaneous with Plaintiff's protected activity; and (3) a causal connection between the protected activity and the adverse action. Krouse, 126 F.3d at 500; Lawrence v. Nat'l Westminster Bank New Jersey, 98 F.3d 61, 70 (3d Cir.1996) (explaining that the NJLAD and ADA are governed by the same standards). Here, there is no causal connection between any

protected activity and Plaintiff's termination because, as set forth in Points I(B)(1) and II(A)(1) above, she received all leave to which she was entitled. See Marsh, supra, 455 F.Supp.3d at 127 (finding plaintiff's argument on ADA and NLJAD causation problematic because the defendant offered, and plaintiff used, all available FMLA leave guaranteed by law, and the plaintiff was terminated because of accrued unexcused, non-FMLA protected absences).

### 2. Plaintiff's Disability Retaliation Claims Fail Because United Established a Legitimate, Non-Retaliatory Reason For Plaintiff's Termination and Plaintiff Cannot Establish Pretext

The McDonnell Douglas burden shifting framework set forth in Points I(B)(1) and II(A)(1) above applies to Plaintiff's NJLAD and ADA retaliation claims. See Cottrell v. Nicholson Properties, LLC, 768 Fed. App'x 148, 150-51 (3d Cir. 2019).

For the reasons set forth in Points I(B)(1) and II(A)(1) regarding United's legitimate, non-discriminatory reason for termination and Plaintiff's inability to establish pretext, Plaintiff's disability retaliation claims must be dismissed. See Marsh, supra, 455 F. Supp. 3d at 127.

### C. Plaintiff's Failure to Accommodate Claim Under the ADA and NJLAD Fail as a Matter of Law

Counts I and III of Plaintiff's Complaint allege that United failed to accommodate her. See Dkt. 1, ¶¶ 46, 61. This claim fails because United made a good faith effort to assist Plaintiff, yet there was no reasonable accommodation that would have allowed her to perform the essential functions of her job.

### 1.  Plaintiff Cannot Meet Her *Prima Facie* Burden On Her Failure to Accommodate Claims

To establish a *prima facie* failure to accommodate claim, a plaintiff must prove that: (1) she was disabled and her employer knew it; (2) she requested an accommodation; (3) her employer did not make a good faith effort to assist; and (4) she could have been reasonably accommodated. Armstrong v. Burdette Tomlin Mem'l Hosp., 438 F.3d 240, 246 (3d Cir. 2006). Plaintiff cannot satisfy the third or fourth elements of her failure to accommodate claim.

### a.  United Made a Good Faith Effort to Assist Plaintiff

An employer makes a good faith effort where it meets with plaintiff about her absences, explains the applicable procedures and encourages plaintiff to apply for FMLA leave. See Soutner, *supra*, 841 Fed. App'x at 415. United did all of these.

The record is clear that Plaintiff was reminded on numerous occasions (*i.e.*, each of the four times she received an Attendance Warning and during meetings with her supervisor) that if she was having difficulty maintaining regular, predictable attendance – an essential function of her job – due to a medical issue, that she could call the ESC and select the RAP option. See SOUMF, ¶ 42. Plaintiff concedes that during the relevant time period, she never spoke to United's ESC for an accommodation, other than to request intermittent FMLA leave. Id. ¶ 101.

Moreover, the only accommodation Plaintiff ever requested was FMLA leave, which United granted *every time* she was eligible and entitled to the leave. Id. ¶¶ 31,

33, 101. Accordingly, summary judgment is appropriate on Plaintiff's ADA and NJLAD failure to accommodate claims. See, e.g., Capps, supra, 847 F.3d 144, 157 (affirming summary judgment where the only request for an accommodation was for intermittent FMLA leave, which was approved); Arana v. Temple Univ. Health Sys., 776 F. App'x 66, 71 (3d Cir. 2019) (an employer ordinarily satisfies its reasonable accommodation duties under the ADA by granting an FMLA request).

### b. Plaintiff Cannot Show That She Could Have Otherwise Been Reasonably Accommodated

Plaintiff is also unable to establish that a reasonable accommodation existed – which is her burden. Bertolotti v. Autozone, Inc., 132 F.Supp.3d 590, 604 (D.N.J. 2015); Donahue v. Consol. Rail Corp., 224 F.3d 226, 233-34 (3d Cir. 2000).

As discussed in Section II(A)(1)(a) above, Plaintiff admits that there was no accommodation that would have allowed her to perform the essential functions of her job other than being able to use intermittent leave unpredictably – even when she was not entitled to FMLA leave. See SOUMF, ¶ 104. As set forth in Section II(A)(1)(a), this is not a reasonable accommodation.

Further, to the extent Plaintiff attempts to argue United failed to engage in the interactive process, the fact that no reasonable accommodation existed is fatal to any such argument. See, e.g., Whelan, 226 Fed. App'x at 147 (finding "failure to participate in the interactive process is not a ground for liability unless the employee

has proven . . . that a reasonable accommodation existed and the employer unreasonably failed to provide it"); <u>Bertolotti</u>, 132 F. Supp. 3d at 603–04 (same).

For those reasons, Plaintiff's NJLAD and ADA failure to accommodate claims must be dismissed.

**POINT III**
**PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE RLA**

Dismissal of Plaintiff's claims is also warranted because they are preempted by the RLA.

As a passenger air carrier, United is subject to the RLA. <u>See</u> 45 U.S.C. § 181. The purpose of the RLA is to provide a comprehensive and exclusive framework for resolving labor disputes in the transportation industry. <u>See</u> <u>Hawaiian Airlines, Inc.</u> <u>v. Norris</u>, 512 U.S. 246, 252 (1994). The RLA contains a mandatory grievance and arbitration provision to ensure the "prompt and orderly settlement of grievances, or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a. Similarly, the RLA requires that disputes between an employee and airline arising from grievances "or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" be resolved internally by the carrier. <u>Id.</u> If the parties fail to reach a resolution, the disputes may be referred to the "appropriate adjustment board." 45 U.S.C. § 184.

If a dispute requires interpretation or application of an existing collective bargaining agreement, it is subject to a compulsory and binding arbitration before an

adjustment board that has "exclusive jurisdiction over the dispute." Int'l Ass'n of Machinists & Aerospace Workers v. U.S. Airways, Inc., 358 F.3d 255, 260 (3d Cir. 2004). Under the RLA, courts are divested of jurisdiction over disputes. Atchison, Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 566 (1987); Hawaiian Airlines, 512 U.S. at 252. Indeed, if either a claim *or a defense* requires the interpretation or application of the terms of a collective bargaining agreement, a statutory discrimination or retaliation (or any other claim) is preempted by the RLA. Bensel v. Allied Pilots Ass'n, 387 F.3d 298 (3d Cir. 2004). Black letter law further holds that claims "based squarely on an alleged breach of the collective bargaining agreement" are preempted by the RLA. Atchison, 480 U.S. at 566; see also, Hamza v. United Continental Holdings, LLC, No. 19-8971, 2021 WL 3206814, at *12 (D.N.J. 2021) (dismissing wrongful discharge and contract claims as preempted by RLA).

## A. Plaintiff's FMLA, ADA, and NJLAD Claims Require Interpretation and Application of the CBA

All of Plaintiff's claims directly implicate the CBA, as they depend upon the interpretation and application policies in the CBA. This requires preemption.

This Court recently held a disability discrimination claim required interpretation of a CBA, and therefore was preempted by the Labor Management Relations Act – which is similar to the preemption analysis under the RLA. Miles v. National Football League, 641 F.Supp.3d 91, 98 (D.N.J. 2022) (finding disability discrimination claims "depend[ed] on whether the NFL's actions were aligned with

the CBA and are therefore preempted"); see also, Maher v. N.J. Transit Rail Operations, Inc., 593 A.2d 750, 763-64 (N.J. 1991) (state law discrimination claims preempted where resolution of the claims depended on safety rules incorporated into the CBA); Carluccio v. Parsons Inspection & Maint. Corp., No. 06-4354 (JLL), 2007 WL 1231758, at *4 (D.N.J. Apr. 24, 2007) (state law claim preempted where resolution was dependent on analysis of defendant's "policies and procedures," which were incorporated by reference into the CBA).

Here, Plaintiff's FMLA, ADA, and NJLAD claims are preempted because the claims require the Court to address the legal effect of multiple provisions of the CBA and interpret the CBA to determine whether Plaintiff was entitled to leave and whether Plaintiff's termination pursuant to the Attendance Policy in the CBA was proper. Plaintiff was a member of the AFA union and was therefore subject to the CBA between United and the AFA. See SOUMF, ¶ 5. The CBA governs both Plaintiff's and United's rights and responsibilities regarding the essential functions of a flight attendant's job, attendance and dependability, progressive discipline, requests for FMLA leave, and the grievance process. Id. ¶ 9, 8-10, 28.

To adjudicate Plaintiff's disability discrimination claims, the Court would have to address the legal effect of the CBA to determine United's obligations under the CBA. Specifically, by alleging that United "counted absences that Plaintiff took related to her disability[,]" used those absences to justify her termination, and that she was "subjected to an unjustifiable hearing," Plaintiff's claims concern United's

application of the CBA's policies regarding attendance points, the corresponding Attendance Warning levels, and progressive discipline. <u>See</u> Dkt. 1, ¶¶ 22-23, 60; SOUMF, ¶ 15-16. By alleging that Plaintiff worked sufficient hours to be eligible for FMLA leave, but that United terminated Plaintiff because of her dependability record, citing the attendance point system, and that during the "Step One Appeal Conference[,]" United "continued to count ADA and/or FMLA-qualifying absences against her," Plaintiff's claims concern the CBA's FMLA policies and the CBA's grievance process. <u>See</u> Dkt. 1, ¶¶ 35-38, 48-50; SOUMF, ¶ 28.

As these allegations are inextricably intertwined with the CBA, the RLA preempts Plaintiff's FMLA, ADA, and NJLAD claims and requires resolution of this matter exclusively in accordance with the CBA.

## **CONCLUSION**

For the foregoing reasons, United's Motion for Summary Judgment and Motion to Dismiss should be granted, and Plaintiff's Complaint should be dismissed in its entirety.

NUKK-FREEMAN & CERRA, P.C.

*Attorneys for Defendant, United Airlines, Inc.*

By: /s/ Jesse Grasty
    Jesse Grasty, Esq.
    Stacy Landau, Esq.
    Whitney Lazo, Esq.
    26 Main Street, Suite 202
    Chatham, New Jersey 07928
    jgrasty@nfclegal.com
    slandau@nfclegal.com
    wlazo@nfclegal.com
    Telephone:  (973) 665-9100

Dated: February 21, 2025