**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAMANTHA NARANJO,<br><br>　　　　　　　*Plaintiff,*<br><br>　v.<br><br>UNITED AIRLINES, INC.,<br><br>　　　　　　　*Defendant.* | Civil Action No. 23-1939 (KSH) (JRA)<br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I.　　Introduction**

Plaintiff Samantha Naranjo, formerly employed as a flight attendant with defendant United Airlines, Inc., alleges that in firing her, United discriminated and retaliated against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq.*, and violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*  United has moved for summary judgment under Fed. R. Civ. P. 56 and to dismiss for lack of jurisdiction[1] under Fed. R. Civ. P. 12(b)(1).  Naranjo opposes, and the Court has decided the motion without oral argument. For the reasons set forth below, United's motion is denied.

---

[1] Early on, the issue of the Court's subject matter jurisdiction arose, and in an August 11, 2023 letter, United represented that it would "not be challenging the Court's subject matter jurisdiction at this time," though it purported to "reserve its right to raise a challenge to the Court's subject matter jurisdiction, pursuant to [the] Railway Labor Act, 45 U.S.C § 151, *et seq.*, preemption or otherwise, should discovery reveal a basis for same."  (D.E. 13.)

1

## II.      Background

Naranjo was employed at United from at least September 1999 until June 6, 2022. (D.E. 48, Final Pretrial Order ("FPTO"), § 5 Stip. of Facts ¶¶ 1, 10; D.E. 50-1, Pl.'s Resp. to R. 56.1 Stmt. ¶ 3 (referencing additional part time work for United from 1997 to 1999).) She worked as a flight attendant "[a]t all times relevant." (FPTO § 5 ¶ 1.) In 2010, she was diagnosed with Crohn's disease, a chronic inflammatory bowel disease. (*Id.* ¶¶ 3-4.) Throughout her employment, Naranjo applied for intermittent FMLA leave. (*Id.* ¶ 5; D.E. 49-2, Def.'s R. 56.1 Stmt. ¶ 33; D.E. 50-1, Pl.'s Resp. to R. 56.1 Stmt. ¶¶ 33-35.) From October 2020 to September 2021, she was on a COVID-19 furlough from United. (FPTO § 5 2nd ¶ 1.)

The undisputed events leading up to Naranjo's termination are laid out in the Final Pretrial Order as follows:

> On May 13, 2022, Ms. Naranjo called out of work due to her Crohn's disease.
>
> On May 21, 2022, Ms. Naranjo advised United that she tested positive for COVID on May 19, 2022.
>
> In accordance with United's COVID-19 absence policies, Ms. Naranjo did not receive any points[2] for her COVID-related absences that occurred after her May 19, 2022 positive COVID test.
>
> On May 25, 2022, Ms. Naranjo had a virtual appointment with her health care provider, Dr. Lubinski, for her Crohn's disease.
>
> On June 6, 2022, United terminated Ms. Naranjo's employment.
>
> (FPTO § 5 ¶¶ 6-10.)

---

[2] Flight attendants accumulate "attendance points" when they are late or absent for scheduled flights. (D.E. 49-2, Def.'s R. 56.1 Stmt. ¶ 12; D.E. 50-1, Pl.'s Resp. to R. 56.1 Stmt. ¶ 12.) If an employee accumulates 30 or more attendance points, they are subject to discharge under United's policies and under the Association of Flight Attendant union's Collective Bargaining Agreement ("CBA"). (D.E. 49-2, Def.'s R. 56.1 Stmt. ¶ 16; D.E. 50-1, Pl.'s Resp. to R. 56.1 Stmt. ¶ 16.)

Naranjo filed a three-count complaint against United on April 5, 2023, alleging disability discrimination, failure to accommodate, and retaliation under the ADA (Count I) and under the NJLAD (Count III); and interference with her FMLA rights and retaliation for seeking or using FMLA leave (Count II). (D.E. 1, Compl.) United answered (D.E. 6), the matter proceeded to discovery, and a final pretrial order was entered (D.E. 48).

United asserts that it is entitled to summary judgment on all of Naranjo's claims because she was fired due to her "excessive unexcused absences," which it contends is a legitimate, non-retaliatory, and non-discriminatory reason for her termination. (D.E. 49-1, Def.'s Mov. Br., at 1-3.) United argues that regular attendance was an essential function of her job; because she could not perform this requirement with or without reasonable accommodations, her ADA and NJLAD claims must fail. (Id. at 28-32.) Further, United argues that Naranjo's FMLA claims must fail because she received all the FMLA leave she was eligible for and entitled to. (Id. at 16-25.) United also argues that her claims should be dismissed as preempted by the Railway Labor Act ("RLA"), 45 U.S.C § 151, et seq., because they are "inextricably intertwined with and require interpretation of numerous policies" in the CBA. (Id. at 37-40.)

Opposing, Naranjo responds that United (1) discriminatorily gave her attendance points when she was experiencing Crohn's flare ups; (2) failed to reasonably accommodate her by punishing her for this intermittent leave; and (3) ultimately terminated her for disability related absences. (D.E. 50-2, Pl.'s Opp., at 1-2, 10-20, 28-38.) Naranjo argues that even if she wasn't eligible for FMLA leave from 2017 to 2022, United failed to consider whether the Crohn's related absences, which accounted for all but 2.5 hours of her total attendance points, entitled her to reasonable accommodations under the ADA or NJLAD and instead counted those absences against her. (Id. at 4, 18-19.) She submits that she regularly asked her managers for help, i.e.,

for reasonable accommodations, and United's failure to provide accommodations constitutes disability discrimination. (*Id.* at 4-5, 16-20.) Further, Naranjo argues that she was eligible for FMLA leave during her May 13, 2022 absence and United's decision to give her another attendance point and then terminate her constitutes FMLA interference. (*Id.* at 20-28.)

**III.    Standard of Review**

Summary judgment is proper where the movant demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Where the moving party is the defendant, the burden is on it to demonstrate that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013).

In resolving a motion for summary judgment, the facts are to be viewed in the "light most favorable to the non-moving party, who is 'entitled to every reasonable inference that can be drawn from the record.'" *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010)). The non-movant "must set forth specific facts showing that there is a genuine issue for trial," and "[b]are assertions, conclusory allegations, or suspicions will not suffice." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018) (quoting *D.E. v. Central Dauphin School Dist.*, 765 F.3d 260, 268-69 (3d Cir. 2014)). A fact is "material" if it "might affect the outcome of the suit under the governing law," *Burton*, 707 F.3d at 425, and a dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-movant, *Jutrowski*, 904 F.3d at 289.

The Court may not weigh evidence or determine credibility, but instead assesses "whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016) (quoting *Reedy*, 615 F.3d at 210).

4

IV.     Discussion

   A. Preemption Under the RLA

United's argument for dismissal of this case under Rule 12(b)(1) is that Naranjo's discrimination, retaliation, and interference claims are preempted by the RLA because they are "inextricably intertwined" with the CBA. (D.E. 49-1, Def.'s Mov. Br., at 37-40.) If United is correct, this Court would lack jurisdiction and the dispute would be subject to binding arbitration. *See Int'l Ass'n of Machinists & Aerospace Workers v. U.S. Airways, Inc.*, 358 F.3d 255, 260 (3d Cir. 2004) (noting that the arbitrator has "exclusive jurisdiction over the dispute" in such cases).

Congress passed the RLA "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (citing *Atchison, T. & S.F.R. Co. v. Buell*, 480 U.S. 557, 562 (1987)). It is "made applicable to the nation's airlines by 45 U.S.C. § 181," and "preempts state law governing 'minor' disputes between employers and employees." *Nachtsheim v. Continental Airlines*, 111 F. App'x 113, 115 (3d Cir. 2004). "A dispute is minor if it involves 'the interpretation or application of existing labor agreements,' whereas a major dispute involves 'rights and obligations that exist independent of the CBA.'" *Id.* (quoting *Norris*, 512 U.S. at 256, 260). Thus, minor disputes are subject to preemption; major disputes are not. *See id.* at 115-16.

In *Stouffer v. Union Railroad Company, LLC*, the Third Circuit drew a line between major and minor disputes. 85 F.4th 139, 144 (3d Cir. 2023). It held

> for the RLA to apply, the CBA must be more than "relevant" to a plaintiff's claim. The "distinguishing feature" of a minor dispute is that it "may be conclusively resolved by interpreting the existing agreement." And, "purely factual questions about an employee's conduct or an employer's conduct and motives do not require a court to interpret any term of a [CBA]."

5

*Id.* (first quoting *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 873 (7th Cir. 2011); then quoting *Consol. Rail Corp. v. Ry. Lab. Execs.' Ass'n*, 491 U.S. 299, 305 (1989); and then quoting *Norris*, 512 U.S. at 261).

The Third Circuit rejected the defendant's argument that "Stouffer's claims are precluded by the RLA because litigating his allegations of discrimination 'may require both reference to and interpretation of the CBA.'" *Id.* It first noted that "Stouffer's claims stem from a federal statute, not the CBA itself." *Id.* at 145. Additionally, it found that "Stouffer has not argued that any provision of the CBA is discriminatory, that the Railroad violated the CBA, or that the CBA was improperly applied to him." *Id.* at 145-46. While the defendant argued that its actions were permitted by the CBA, and as such interpretation of the CBA may be required, the Third Circuit held that "a claim is not barred simply because 'the action challenged by the plaintiff is "arguably justified" by the terms of the CBA.'" *Id.* at 146 (quoting *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 833 (7th Cir. 2014)).

Naranjo is bringing discrimination, failure to accommodate, retaliation, and interference claims under the ADA, NJLAD, and FMLA. Nowhere does she challenge the CBA; rather, she alleges that United used the CBA discriminatorily. She is ultimately "challenging United's motives in taking adverse action in violation of rights or obligations that exist independently of the CBA." *Bendetsen v. United Airlines, Inc.*, 2025 WL 942963, at *6 (D.N.J. Mar. 26, 2025) (Neals, J.) (citing *Stouffer*, 85 F.4th at 144); *see also Prolenski v. Transtar, LLC*, 2024 WL 1973495, at *6 (W.D. Pa. May 3, 2024) (declining to find preemption where the plaintiffs sought to assert rights that flowed from ERISA, "not the CBA itself"). The Court denies United's motion to dismiss.

### B. ADA/NJLAD Claims

United has moved for summary judgment on Naranjo's discrimination, failure to accommodate, and retaliation claims under the ADA and the NJLAD, which are discussed in turn.

### 1. *Discrimination*

The ADA and the NJLAD prohibit covered entities from discriminating against qualified employees based on their disabilities. *Eshleman v. Patrick Indus.*, 961 F.3d 242, 245 (3d Cir. 2020); *Victor v. State*, 203 N.J. 383, 401, 405 (2010). To state a *prima facie* cause of action for disability discrimination under either statute, Naranjo must demonstrate "(1) [she] was disabled; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an otherwise adverse employment decision as a result of discrimination." *Stewart v. Cnty. of Salem*, 274 F. Supp. 3d 254, 259 (D.N.J. 2017) (Hillman, J.) (internal citation omitted).

United does not dispute that Naranjo was disabled. (*See* D.E. 49-1, Def.'s Mov. Br., at 29.) Rather, it argues that Naranjo fails on the second and third elements, that is her lack of dependability made her unqualified to perform an essential function of her job, and there is no causal connection between her disability and her termination. (*Id.* at 28-34.) Embedded within its first argument is that "dependability" is an essential function of a flight attendant's job, and that giving a disabled flight attendant intermittent, unpredictable time off is not a "reasonable accommodation," even if the request is made because the flight attendant is experiencing a debilitating medical condition at the time.

"Under the ADA, an employer discriminates against a qualified individual with a disability when the employer does 'not mak[e] reasonable accommodations to the known

7

physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship[3] on the operation of the business of the [employer].'" *Stewart*, 274 F. Supp. 3d at 260 (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 305-06 (3d Cir. 1999)). And under the NJLAD, an employer must "make a reasonable accommodation to the limitations of an employee [ ] who is a person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship." *Id.* (quoting *Gavin v. Haworth, Inc.*, 2016 WL 7325474, at *8 (D.N.J. Dec. 16, 2016) (Simandle, C.J.)).

"On the issue of reasonable accommodation, the plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits." *Id.* at 263 (quoting *Skerski v. Time Warner Cable Co., a Div. of Time Warner Entm't Co., L.P.*, 257 F.3d 273, 284 (3d Cir. 2001)). Summary judgment for a defendant is proper only "in cases in which the plaintiff's proposal is either clearly ineffective or outlandishly costly." *Id.* (quoting *Skerski*, 257 F.3d at 284).

Further, "[w]hether a particular function is essential is a factual determination that must be made on a case by case basis." *Skerski*, 257 F.3d at 279. The ADA's regulations define "essential functions" as the fundamental—not marginal—duties of a given job, and contemplate that in making this determination, the factfinder consider "(1) whether the performance of the function is 'the reason the position exists;' (2) whether there are a 'limited number of employees

---

[3] The ADA defines "undue hardship" as "an action requiring significant difficulty or expense, when considered in light of [a series of factors]." 42 U.S.C. § 12111(10)(A). These factors include the cost of the accommodation, the overall financial resources of the defendant, the overall size of the defendant's business with respect to the number of its employees and facilities, and the type of operations of the defendant, among other factors. 42 U.S.C. § 12111(10)(B).

available among whom the performance of that job function can be distributed;' and (3) whether the function is 'highly specialized so that the incumbent in the position is hired for his or her expertise.'" *Skerski*, 257 F.3d at 279 (quoting 29 C.F.R. § 1630.2(n)(2)); *see also* 29 C.F.R. § 1630.2(n)(3) (providing non-exhaustive examples designed to assist a factfinder in identifying the "essential functions" of a job).

The Court finds that there are issues of material fact that preclude granting summary judgment to United. First, there is the issue of whether "dependability" is an essential function of a flight attendant's job, which is a factual determination analyzed on a case-by-case basis. *Skerski*, 257 F.3d at 279. Further, even if it is, Naranjo cites her attendance record as evidence that she only missed work four times in her last two years of employment. (D.E. 50-2, Pl.'s Opp. Br., at 11 & Ex. F.)

Second, whether intermittent medical leave is a reasonable accommodation is a factual dispute at the very heart of this case. Naranjo points out that United has not "set forth any evidence . . . [that] accommodating [her] would have been an undue burden." (*Id.* at 18.) Drawing all reasonable inferences in her favor from the record, a reasonable factfinder could conclude that her proposed accommodation is neither "clearly ineffective [n]or outlandishly costly" to United. *Stewart*, 274 F. Supp. 3d at 263. Indeed, at her deposition, Naranjo testified that United employs approximately 26,000 flight attendants (Naranjo Dep. Tr., at 39:1-8), and in its moving brief, United observes that "flight attendants have the flexibility to trade trips with other flight attendants" (D.E. 49-1, Def.'s Mov. Br., at 6). Naranjo also testified that she "always" called out prior to the day she was scheduled to work. (Naranjo Dep. Tr., at 125:1-8.)

Also at the heart of this case is whether United fired Naranjo because of her chronic condition. United argues that it "had no knowledge that [Naranjo's] absences were due to her

9

Crohn's disease." (D.E. 51, Def.'s Reply, at 14.) Naranjo asserts just the opposite—she testified that she was "open and honest" in telling her supervisors, Michelle Mackey and Carlos Goncalves, that she had Crohn's and was missing work because of bouts with this chronic condition. (Naranjo Dep. Tr., at 36:13-38:25, 46:6-17, 49:2-18, 51:3-52:25, 59:11-60:3.) All but 2.5 of her roughly 30 attendance points were because of her Crohn's related absences. (D.E. 50-2, Pl.'s Opp. Br., at 19, 22; *see* Naranjo Dep. Tr., at 42:9-20 (describing that she believed she received "a total of one point maybe" due to a late boarding occurrence and accidental missed training).)

Finally, Naranjo asserts a jury could find that she has produced direct evidence of discrimination. (D.E. 50-2, Pl.'s Op. Br., at 31-32.) Direct evidence is evaluated under the test in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), while circumstantial evidence is evaluated under the test in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See Glanzman v. Metropolitan Mgmt. Corp.*, 391 F.3d 506, 512 (3d Cir. 2004) ("Under *Price Waterhouse*, once direct evidence of . . . discrimination is presented the 'burden of persuasion on the issue of causation shifts, and the employer must prove that it would have fired the plaintiff even if it had not considered . . . [her] [disability].'") (citation omitted); *Fuentes v. Perksie*, 32 F.3d 759, 764 (3d Cir. 1994) (Under the final prong of *McDonnell Douglas*, "the plaintiff must point to some evidence . . . from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.").

Under either test, Naranjo has adduced evidence that there are genuine issues as to causation and pretext. She testified that after she was given attendance points because she was too sick to come into work, she asked her supervisors for help; rather than helping, Mackey told

10

her to "do better" and that she "can't call in anymore." (Naranjo Dep. Tr., at 37:13-18, 52:19-25, 99:15-18.) After her May 13, 2022 flare up, Naranjo was given another attendance point and fired. (*Id.* at 124:21-125:8, 131:19-132:25.) A reasonable factfinder could find that United, through Mackey, was aware of Naranjo's Crohn's disease, counted her chronic condition against her when giving her attendance points, and ultimately fired her because of those absences.

The Court finds that these factual disputes are for a jury to resolve, and United's request for summary judgment is denied as to this claim.

### 2. *Failure to Accommodate*

To prevail on a failure to accommodate claim under the ADA or the NJLAD, Naranjo must demonstrate: "(1) she was disabled and her employer knew it; (2) she requested an accommodation or assistance; (3) her employer did not make a good faith effort to assist; and (4) she could have been reasonably accommodated." *Armstrong v. Burdette Tomlin Mem. Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006) (citation modified); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319-20 (3d Cir. 1999). An employee requests an accommodation when she "made her handicap known and announced her desire for assistance." *Armstrong*, 438 F.3d at 247.

United argues that it made a good faith effort to assist Naranjo and, in any event, she could not have been reasonably accommodated. (D.E. 49-1, Def.'s Mov. Br., at 34-37.) Whether Naranjo's purported accommodation is reasonable or not is an issue for the factfinder. And Naranjo testified that United, again through Mackey, did nothing to help her, let alone made a "good faith effort" to help her:

> A. So my points kinds of stayed with me for years. So whenever I didn't have my family medical leave my disease was always counted against me. And I expressed to [Mackey] I can't make it go away. Like, what am I supposed to do? I need help. What am I supposed to do?
>
> . . .

11

Q. And what did she say to you?

A. Always do better. You can't get -- you can't call in anymore. That was always. You can't afford to call in anymore.

Q. Did she talk to you about how to seek a reasonable accommodation?

A. No.

Q. Did anyone at any point direct you as far as how to seek an accommodation?

A. No.

Q. Did anyone tell you who to contact?

A. No.

(Naranjo Dep. Tr., at 52:11-53:3.)

The record reflects genuine issues of material fact as to the failure to accommodate claim, which precludes summary judgment for United.

### 3. *Retaliation*

To prevail on a retaliation claim, Naranjo must establish: (1) she "was in a protected class"; (2) she "engaged in protected activity known to the employer"; (3) she "was thereafter subjected to an adverse employment consequence"; and (4) "there is a causal link between the protected activity and the adverse employment consequence." *Boles v. Wal-Mart Stores, Inc.*, 650 F. App'x 125, 128 (3d Cir. 2016); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). United again argues that there was no causal connection between Naranjo's disability and her termination. (D.E. 49-1, Def.'s Mov. Br., at 29, 34.) Further, it argues that even if Naranjo could make out a *prima facie* case of retaliation, it fired her because she reached 30 attendance points which is a legitimate, non-discriminatory reason for termination and not pretextual. (*Id.* at 32-34.)

However, as discussed, there are genuine issues of material fact as to (1) whether United was aware of Naranjo's Crohn's disease, (2) whether it counted her chronic condition against her when giving her attendance points, and (3) whether it fired her because of those absences. The record contains comments from Mackey ("do better"; "you can't call in anymore"; "you can't afford to call in anymore"), proof that Mackey made the decision to fire Naranjo, and evidence that she was fired shortly after requesting disability related leave. Naranjo had accumulated 30 attendance points over 11 years at United (*see* D.E. 50 & Ex. F), but she asserts all but 2.5 hours were due to her chronic condition, and that she only missed work four times in the past two years. Taken in the best light, a "factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. These issues preclude summary judgment.

### C. FMLA Claims

United has also moved for summary judgment on Naranjo's interference and retaliation claims under the FMLA.

#### 1. *Interference*

The FMLA permits eligible employees 12 workweeks of leave during any 12-month period if the employee has a "serious health condition" rendering the employee unable to perform the functions of his or her position. 29 U.S.C. § 2612(a)(1)(D). Employers may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" rights granted under the FMLA, *id.* § 2615(a)(1), and "[a]ny violations of the Act" or its regulations constitute interference with an employee's rights, 29 C.F.R. § 825.220(b).

To establish interference, Naranjo must demonstrate: (1) she was an eligible employee under the FMLA, (2) United was an employer as defined by the FMLA, (3) she was entitled to FMLA leave, (4) she gave notice to United of her intention to take FMLA leave, and (5) she was denied benefits to which she was entitled under the FMLA. *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014) (citation omitted). To satisfy the first prong—eligibility for FMLA leave—an employee must have (1) "worked or been paid for not less than 60 percent of the applicable total monthly guarantee, or the equivalent, for the previous 12-month period," and (2) "worked or been paid for not less than 504 hours . . . during the previous 12-month period." 29 U.S.C. § 2611(2)(D)(i).

United argues that "[a]lthough [Naranjo] was eligible for FMLA leave when she applied on May 12, 2022," she was not *entitled* to FMLA leave for her May 13 absence because she submitted her certification nine days late. (D.E. 49-1, Def.'s Mov. Br., at 18-19.) This goes to whether Naranjo has satisfied the third and fifth elements of her interference claim with sufficient evidence. To support that assertion, United points to 29 C.F.R. § 825.305(b), which provides in full

> In most cases, the employer should request that an employee furnish certification at the time the employee gives notice of the need for leave or within five business days thereafter, or, in the case of unforeseen leave, within five business days after the leave commences. The employer may request certification at some later date if the employer later has reason to question the appropriateness of the leave or its duration. The employee must provide the requested certification to the employer within 15 calendar days after the employer's request, *unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts* or the employer provides more than 15 calendar days to return the requested certification.

(emphasis added).

"Absent such extenuating circumstances, if the employee fails to timely return the certification, the employer can deny FMLA protections for the leave following the expiration of

14

the 15-day time period *until a sufficient certification is provided*. If the employee never produces the certification, the leave is not FMLA leave." *Id.* § 825.313(b) (emphasis added).

Naranjo asserts that in February 2022, her doctor submitted an FMLA certification to United on her behalf. (D.E. 50-2, Pl.'s Opp. Br., at 25-26; Naranjo Dep. Tr., at 116:11-22, 129:4-130:5.) She asked for another FMLA certification in connection with her May 13, 2022 absence, but he didn't submit it. (Naranjo Dep. Tr., at 128:19-132:17.) When she found out,[4] she drove to her doctor's office the following day, got the certification, and submitted it to United that same day. (D.E. 50-2, Pl.'s Opp. Br., 6, 24-27; Naranjo Dep. Tr., at 128:19-132:17.) She alleges that United interfered with her FMLA rights by "[f]ailing to notify her [that] it did not receive a completed FMLA certification by May 27, 2022"; "[f]ailing to consider whether extenuating circumstances existed and whether an exception to the permissive 15-day requirement United set could be made"; "[f]ailing to consider the February 2022 Certification of [her] same physician for the same Crohn's disease and intermittent leave request and either seek an update for the same or accept the same to cover her May 12, 2022 absence"; and "[t]erminating her to prevent her from continuing her proper utilization of intermittent FMLA leave." (D.E. 50-2, Pl.'s Opp. Br., at 27-28.)

As to the extenuating circumstances United allegedly failed to consider, Naranjo asserts that she called out on May 13 because she was experiencing a Crohn's flare up; then she tested positive for COVID and had to move her doctor's appointment to a May 25, 2022 virtual appointment. (*Id.* at 6; Naranjo Dep. Tr., at 122:11-128:16.) She testified that her symptoms

---

[4] Naranjo testified that she found out her certification was never submitted when she noticed in early June 2022 that she "had been taken off the schedule" and called to figure out why. (Naranjo Dep. Tr., at 131:19-132:25.) When she called Mackey, Mackey told her that they never received Naranjo's FMLA paperwork and that an investigative hearing was scheduled for June 6, at which time Naranjo was fired. (*Id.* at 132:18-133:5.)

included cramping, diarrhea, and vomiting until "probably [May] 25." (Naranjo Dep. Tr., at 127:17-128:15.) Her certification was due to United on May 27, and United declined to "provide[] [her] more than 15 calendar days to return the requested certification" as permitted by 29 C.F.R. § 825.305(b), nor did it reconsider its denial after a "sufficient certification [was] provided," *id.* § 825.313(b). (*See* D.E. 50-2, Pl.'s Opp. Br., at 24-28.)

The Court finds from the record that genuine issues exist about both sides' actions surrounding the submission of Naranjo's certification by May 27, which precludes summary judgment on her interference claim.

### 2. *Retaliation*

Finally, to succeed on an FMLA retaliation claim, Naranjo must show that (1) she invoked her right to FMLA-qualifying leave, (2) suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights. *Ross*, 755 F.3d at 193 (citation omitted). Courts have found that FMLA retaliation claims are assessed "through the lens of employment discrimination law," i.e., by analyzing the claim under *McDonnell Douglas* or *Price Waterhouse*. *Id.* (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-02 (3d Cir. 2012)). Both sides agree that this requires the same analysis applicable to Naranjo's ADA/NJLAD retaliation claim (*see* D.E. 49-1, Def.'s Mov. Br., at 22-28, 34; D.E. 50-2, Pl.'s Opp. Br., at 28-36), so United's motion for summary judgment must be denied as to this claim as well.

**V.     Conclusion**

      For the reasons set forth above, United's motion is denied.  An appropriate order will issue.


Dated:  September 30, 2025                                /s/ Katharine S. Hayden
                                                                                            Katharine S. Hayden, U.S.D.J.